## Connelly, Administrator, *versus* McKean, Administrator.

64  113
f193 224

1. Tyler died in 1864, at his death there was found in his possession an unendorsed note dated June 5th 1861, to him from Connelly, who had died in 1863. In a suit on the note, under the plea of non assumpsit, drafts by Tyler on Connelly also unendorsed, and proof that Connelly had been able to pay the note and that Tyler was embarrassed would be evidence.

2. From this evidence a jury might infer that the relation of the parties was not that of debtor and creditor.

3. Such evidence was not relevant under the plea of payment only.

4. This is so, although it does not appear that drafts had been negotiated or in circulation.

5. If a drawee retains a bill an unreasonable time the holder could sue him in trover.

6. A drawee may demand twenty-four hours to deliberate whether he will accept.

7. Endorsed bills, checks or orders for the payment of money on delivery of goods, are primâ facie evidence of payment.

8. A draft of Tyler, payable to his own order, on Connelly, found in Connelly's possession, was evidence of payment by Connelly.

9. Tyler's own endorsement was not necessary to Connelly as a voucher.

10. If Tyler had made an endorsement to another, his endorsement or some proof of payment to him would have been necessary.

January 14th 1870. Before THOMPSON, C. J., READ and SHARSWOOD, JJ. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* Of July Term 1869, No. 27.

This was an action of assumpsit, brought in March 1867, by Allen McKean, administrator, &c., of Hugh Tyler, deceased, against Harry Connelly, Jr., administrator, &c., of Harry Connelly, deceased. The case was on the following note, found in Tyler's possession after his death, without endorsement:

"[$1500.]                                   Philadelphia, June 5th 1861.
Thirty days after date, I promise to pay to the order of Mr. Hugh Tyler, fifteen hundred dollars, without defalcation. Value received.                                   HARRY CONNELLY."

It went to trial before Hare, P. J., on the pleas of payment with leave, &c., and set-off. Connelly died in February 1863 and Tyler in 1864. The plaintiff gave the note in evidence and closed.

14 P. F. SMITH—8

[Connelly *v.* McKean.]

The defendant then made the following offers of evidence, which were all rejected, and several bills of exception sealed:

DRAFTS. 1.

" [$600.]                         Washington, June 12th 1861.
At sight pay to the order of J. S. Hall, six hundred dollars.
                                                    H. TYLER.
To HARRY CONNELLY, Esq.,
          Philadelphia, Pa."

2.

" [$200.]          .          Washington, D. C., July 20th 1861.
Three days after sight, pay to the order of Suter, Lea & Co., two hundred dollars.          H. TYLER.
To HARRY CONNELLY, Esq.,
          Philadelphia.
     Accepted July 22d 1861.
          H. CONNELLY."

3.

" [$100.]                    Washington, D. C., July 30th 1861.
At one day's sight, pay to the order of Suter, Lea & Co., one hundred dollars.          H. TYLER.
To HARRY CONNELLY, Esq.,
          Philadelphia,
     Accepted July 31st 1861.
          HARRY CONNELLY."

4.

" [$100.]                    Washington, D. C., August 6th 1861.
At two days' sight, without grace, pay to the order of Suter, Lea & Co., one hundred dollars.          H. TYLER.
To HARRY CONNELLY,
          Philadelphia.
     Accepted August 7th 1861.
          HARRY CONNELLY."

                              "Washington, June 7th 1861.
My Dear Harry:
I received your letter yesterday, and immediately telegraphed to New York for a discount, and got a negative answer. Unfortunately for me, I had drawn against it for $2000 on New York, on the supposition the deposit would be made, and when I got your letter, was obliged to borrow a friend's check for the amount, and gave him mine payable the 10th, and if the deposit is not made, I am in a serious difficulty, for I have no other means of meeting it *at present*, and if it is not there, I am not only ruined but disgraced. My people give no quarter, or in other words, *some of them.*          Yours, truly,     H. TYLER.
Telegraph me in the morning early."

A paper in handwriting of Harry Connelly, deceased, viz. :—

[*Connelly v. McKean.*]

" Your letter has distressed me beyond measure. I had hoped that you would have been able to negotiate my note sent you, and trust now that Magraw has had it in his power to relieve me for that length of time. ———— ————, of this city, now in Washington, owes me some money that should have been paid six weeks since. The last time I saw him he promised me it should be settled the latter part of last week. Since then I have not seen him. I enclose you a draft on him for $1500, which he may pay, with a note also stating my position, which please hand him yourself, and write me his reply. I shall have $500 I can deposit to your credit to-morrow. Telegraph me early what I must do, and the name of your bank."

Check-book of Harry Connelly with the Farmers' and Mechanics' Bank, with this entry upon the margin opposite to a check cut from this book, in the handwriting of said Harry Connelly :—

"1861, June 8th.    H. Tyler, $500."

The defendant then gave in evidence a book of the Farmers' and Mechanics' Bank, charging Connelly with a check for $500, drawn by him and paid by the said bank on June 8th 1861.

The defendant's offer of the $500 entry in the check-book, the letter of Hugh Tyler to Harry Connelly, and the paper heretofore set forth in handwriting of Harry Connelly, was again made and rejected.

This check was then given in evidence :—

"Philadelphia, September 3d 1862.
Farmers' and Mechanics' Bank :
Pay to Hugh Tyler, Esq., or order, fifty dollars.
[$50.]                                    HARRY CONNELLY.
    (Endorsed)    H. TYLER."

The defendant then renewed his offer of the same check-book of Harry Connelly, deceased, for the purpose of using in evidence an entry in the handwriting of said Harry Connelly, as follows, viz. :—

"1862 September 3d.    Lent Hugh Tyler $50."

Also the following drafts :—

"[$1000.]                        Washington, August 22d 1861.
On the first day of November pay to the order of myself (H. Tyler), one thousand dollars. Value received; and charge the same to account of                              H. TYLER.
    To HARRY CONNELLY,
            Philadelphia.
                H. CONNELLY."

" [$5000.]                              New York, June 30th 1859.

At sight, pay to the order of James Buell, Esq., cashier, five thousand dollars.   Value received; and charge the same to account of                                   H. TYLER.

    To HARRY CONNELLY, Esq.,
               Philadelphia."

All which were rejected.

The defendant then offered to prove that Harry Connelly, from the time of the date of the note until the time of his death in February 1863, as well as his estate after his death, was in good pecuniary circumstances, and could at any time have been made to pay an indebtedness of $1500; and that Hugh Tyler, from the time of the date of the note sued on until the time of his death in the year 1864, was in embarrassed circumstances and greatly in need of money.   This was rejected.

The defendant submitted this point, which was refused by the court:—

" The note sued on in this case not having been endorsed, no recovery can be had thereon, and the verdict must be for defendant."

The verdict was for the plaintiff for $2134.56.

The defendant took a writ of error; and assigned for error the rejection of his offers of evidence, and the answer to his point.

*G. M. Dallas*, for plaintiff in error.—Both parties were dead, and six years nearly had elapsed since the note was due—great liberality should be allowed in admitting evidence: Patton *v.* Craig, 7 S. & R. 116.   The possession of the drafts was evidence that the defendant had paid them: Weidner *v.* Schweigart, 9 S. & R. 385; 1 Greenl. Ev. § 38, *et in notâ:* Gibbon *v.* Featherstonhaugh, 1 Stark. 179 (225); Bracken *v.* Miller, 4 W. & S. 112; and that they were in payment of an antecedent debt: Welch *v.* Seaborn, 1 Stark. 385 (474); Alvord *v.* Baker, 9 Wend. 323. There being no other debt than the note, the law would appropriate them to that: Murphy *v.* Richardson, 9 Casey 235; Rodgers *v.* Kichline, 4 Id. 231; Tilghman *v.* Fisher, 9 Watts 441.   Proof of the pecuniary circumstances of the parties was admissible: Leven *v.* Van Buskirk, 4 Barr 309; Ross *v.* Darley, 4 Munf. 428; Henderson *v.* Lewis, 9 S. & R. 379; Lesley *v.* Nones, 7 Id. 410; Diamond *v.* Tobias, 2 Jones 312.

*C. Gibbons*, for defendant in error.—The possession of a bill by an acceptor is not presumption of payment by him without proof that it has been in circulation: 2 Greenl. Ev. § 527; Eckert *v.* Cameron, 7 Wright 120.

The opinion of the court was delivered, January 24th 1870, by SHARSWOOD, J.—Had the case been tried below on the general

[Connelly *v.* McKean.]

issue under the plea of non assumpsit, the several drafts offered, as well as the letter of Tyler, dated June 7th 1861, and the testimony of Mr. Bayard, would have been competent evidence as tending to show the relations between the parties, that their course of business was to lend their names to each other to raise money, and that the note declared on was of that character. Indeed the letter of June 7th 1861 is hardly susceptible of any other construction. It is dated at Washington two days after the note sued upon. It is not the letter of a creditor to his debtor, but of an embarrassed man struggling with difficulties, and appealing to his friend to whom it was addressed for assistance. He had received a letter from Connelly on June 6th, which it is highly probable was dated June 5th, and enclosed the note of that date. He did not offer it for discount, for then it would have been endorsed, but he immediately telegraphed to New York to know if it would be discounted, and received a negative answer. It failed to accomplish its object, was laid aside and probably forgotten by both. On what other theory can the possession by Connelly of Tyler's drafts, accepted but not endorsed, to the amount of $7000, be accounted for? It looks very much as if they were unsuccessful attempts of the same kind. That one of them for $5000 is in favor of a cashier is a very significant fact in confirmation of the same view. To rebut it, it should appear that Tyler had funds in Connelly's hands on which he had a right to draw to that amount. Let it be borne in mind that both parties are dead; that Connelly the alleged debtor died in February 1863, eighteen months after the maturity of the note, and that Tyler the alleged creditor survived him two years without making any claim on his estate; that Tyler was in embarrassed circumstances, and Connelly and his estate solvent and well able to pay. This note is found among Tyler's papers after his death, and suit is brought upon it by his administrator against the administrator of Connelly nearly six years after its maturity. All this was evidence, from which, if uncontradicted and unexplained, a jury might fairly and reasonably infer that the relation between the parties at the time of Connelly's death was not that of debtor and creditor.

The difficulty, however, is that the only plea was payment, which of course admitted the original liability. The draft of June 30th 1859, long anterior to the giving of the note, was irrelevant to this issue. So was the letter of June 7th 1861. The paper in Connelly's handwriting, not addressed to Tyler, and no notice given to produce the original, was clearly inadmissible, as was the entry on the check-book of Connelly of the check of $500 in favor of Tyler—the entry of the loan of $50, and the testimony of Mr. Bayard, as tending in no way to prove payment. But the other drafts referred to in the 1st, 2d, 3d, 4th and 10th assignments of error stand on a different footing. The first, indeed,

which refers to the draft at sight for $600, dated June 12th 1861, cannot be sustained, for the bill was prior to the maturity of the note in suit and without more was no evidence of payment. The others, however, are subsequent in date. The objection is, that they did not appear to have ever been in circulation, and that it is necessary to give some evidence of that before a bill produced by an acceptor raises any presumption that it has been paid by him. It was so held by Lord Ellenborough in Pfiel *v.* Vanbatenburg, 2 Campb. 439, and it seems to be adopted by the elementary writers without question: 2 Greenlf. § 527; Story on Notes, § 452; Byles on Bills 222. The plaintiff's case was that he had accepted and paid several bills of exchange for the defendant's accommodation. Lord Ellenborough is reported to have said: " Show that the bills were once in circulation after being accepted, and I will presume that they got back to the acceptor's hands by his having paid them. But when he merely produces them, how do I know that they were in the hands of the payee or any endorsee, with his name upon them as acceptor ? It is very possible that when they were left for acceptance he refused to deliver them back, and having detained them ever since, now produces them as evidence of a loan of money." Undoubtedly they were no evidence of a loan, but having proved that they were originally lent, of which the report does not state that there was any evidence, why should not the possession of them by the acceptor after maturity raise the presumption that he had paid them ? With the highest respect to so great an authority upon Nisi Prius law, I may be allowed to express a doubt as to the sufficiency of the reason. Contrary to established principle, it presumes a fraud to have been perpetrated, when the natural presumption is that which consists with honesty. Besides which it assumes that the holder acquiesced in a palpable wrong. If the drawee retains the bill an unwarrantable time, the holder could sue him in trover. It is a reason which applies as well to a bill which had been negotiated before acceptance; for the endorsee may leave it in the hands of the drawee for acceptance. When the bill is presented, it is reasonable that the drawee should be allowed some time to deliberate whether he will accept or no. It seems that he may demand twenty-four hours for this purpose, and that the holder will be justified in leaving the bill with him for this period: Byles on Bills 177. So that even an endorsed bill, produced by the acceptor after maturity, would not be evidence of payment if this be a sound reason. But surely endorsed bills, checks or orders for the payment of money or delivery of goods are primâ facie evidence, according to the general current of the authorities. So it was expressly held by Lord Kenyon, in Egg *v.* Barnett, 3 Esp. Rep. 196, that to prove payment of a debt due by the defendant to the plaintiff, a check on a banker in his favor and endorsed by him, was evidence to go to the jury of payment.

[Connelly v. McKean.]

Lord Kenyon said: " This is not merely using the name in the body of the draft, which is arbitrary, and would of itself be certainly no evidence, but here the money has been actually received by the plaintiff and his servant, for their names are put on the backs of the checks as receiving the money.   This is evidence to go to the jury."   See Gibbon v. Featherstonhaugh, 1 Starkie 225 ; Brembridge v. Osborne, Id. 374 ; Shepherd v. Currie, Id. 454 ; Patton v. Ash, 7 S. & R. 116 ; Weidner v. Schweigart, 9 Id. 385 ; Garloch v. Geartner, 7 Wend. 198 ; Alvord v. Baker, 9 Wend. 323 ; Hill v. Gayle, 1 Alabama 275.   The true and valid objection to all the drafts offered in evidence below, except that contained in the 10th assignment, is that they were not endorsed by the payees.   The drawer had stipulated that they should be paid to their order, and he had a right to their endorsement as his voucher against them.   A payment by the acceptor without such endorsement in blank, would render it necessary for him to prove actual payment to them.   For this reason these drafts were also rightly rejected.   But this reason does not apply to the draft dated August 21st 1861, drawn as it is expressed " to the order of myself (H. Tyler)" for $1000.   We are of the opinion that it was evidence to go to the jury to that amount.   If there were no other transactions between the parties it would be strong evidence of payment on account of this debt : if however there were other transactions it would be entitled to more or less weight according to the circumstances in evidence going to show that it was applied to the debt in suit : Byles on Bills 222 ; Murphy v. Richardson, 9 Casey 235.   Tyler's own endorsement is not necessary to him as a voucher against any body in a bill drawn to his own order.   If he had made a special endorsement to another, then the endorsement of that other would have been necessary or some proof of payment to him.   It was decided in Smith v. McClure, 5 East 476, that a bill payable to the drawer's own order is payable to himself, if he did not order it to be paid to any other ; and no such order appearing, it must be presumed that none was made.   Mr. Chitty tells us that a person in possession of a bill payable to his own order is a holder, though it was once thought that he had only authority to endorse : Chitty on Bills 365 ; and that he may count upon it as payable to himself : Id. 571 ; and it was held in Titcomb v. Thomas, 5 Greenl. 282, that a bill payable to the order of the drawer and not endorsed, may be assigned for valuable consideration by delivery only, and an action for the benefit of the assignee will lie against the acceptor in the name of the drawer, as on a bill payable to himself.   It follows logically that the acceptor need not require the endorsement of the drawer to be placed on the bill before payment.   The possession of the draft by him after maturity shows primâ facie that he has paid it to the right person—the drawer himself.

Judgment reversed, and *venire facias de novo* awarded.