## Martha Helzer, Administratrix of Melchoir Helzer, deceased, Appellant, *v.* William P. Helzer.

*Judgment note—Lost note—Evidence—Presumption.*

In an action by an administrator on a judgment note given to the decedent, but alleged to be lost, where the defendant produces the note and identifies it by plaintiff's own witness, and also shows that it was in his possession at the time of the decedent's death and that it has been in his possession ever since, and there is no evidence as to either payment or nonpayment of the note, there is no presumption that the possession is unlawful, and the plaintiff cannot recover. In such a case evidence as to defendant's presence in decedent's house and of threats which he made in decedent's lifetime to " get even with him " are insufficient to rebut the presumption that defendant's possession of the note was lawful.

Argued May 17, 1899. Appeal, No. 133, Jan T., 1899, by plaintiff, from judgment of C. P. York Co., on verdict for defendant. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit upon a judgment note alleged to be lost. Before STEWART, P. J.

At the trial defendant produced a note which was identified by the subscribing witness as the note sued upon. This note is as follows:

"$1,400             YORK, PA., February 8, 1896.

" One year after date I promise to pay Melchoir Helzer the sum of fourteen hundred dollars, the same being purchase money for real estate this day conveyed, without defalcation, for value received, with interest at 3 per cent. from April 1st. 1896. And I hereby authorize the prothonotary of York county to enter, or any attorney of any court of record, to appear for me and confess judgment for above sum, interest and cost and release of errors, and hereby waive all stay of execution. And further I do hereby agree that all my estate and effects, without exception or exemption, shall be subject to levy and sale in execution thereof to an amount sufficient to satisfy said judgment, hereby waiving and relinquishing all benefit of any law exempting such estate and effects, or any part thereof, from such levy or sale. And further I hereby waive and dispense

with an inquisition and condemnation of all my real estate, and agree that the same shall be sold upon a writ of fieri facias, or any other writ that may be necessary for that purpose, and I hereby agree in default of payment of this note when it becomes due to pay 5 per cent additional for attorney's fees for collection.

" Witness my hand and seal this 8th day of Feb. A. D., 1896.

" Witness :    .                                [Seal]

     "C. F. KEECH.             WILLIAM P. HELZER   [Seal]

                                                   [Seal.]"

The defendant and his wife testified that the note was in the possession of the defendant at the time of his father's death, on May 8, 1896, in his trunk, and the defendant further testified that shortly after his father's death he took it to the office of William A. Miller, Esq., one of his counsel, in whose possession it remained up to the time of the trial. In this he was corroborated by Mr. Miller, who testified that the defendant brought it to his office on May 12, four days after the death of the decedent. It was further shown that the note was canceled after that date by the direction of the defendant's counsel.

Plaintiff proposed to prove by herself and others, first that defendant in the lifetime of Melchoir Helzer threatened that if he could get hold of anything that belonged to the old man, he would keep it, or words to that effect; and also to prove that on Friday morning shortly after the suicide of Melchoir Helzer, the defendant was in the room in which the body lay, and in which the chest was, in which Melchoir Helzer's papers were kept, for a half hour or more; that on the Monday following he was also in the house, and that on the Tuesday following he made a complete search of the house from cellar to garret; for the purpose of showing the animus of the defendant towards his father and the expressed determination to keep what he might get of his, and to show the opportunity which he had for getting the note in suit.

This is offered in connection with the other evidence, of the loss of the instrument, and to show the plaintiff's right to recover.

Objected to by Mr. Niles, of counsel for defendant, as not proper legal evidence for the purpose offered, or for any purpose for the plaintiff in this stage of the proof; that there being no proper legal evidence in the case of the cause of action, this evidence is irrelevant and immaterial; that the plaintiff having refused to offer in evidence the note in suit, proved by her witnesses to be such, which is here and in her power to offer, the evidence in regard thereto, or the possession thereof, is irrelevant and immaterial, misleading and improper.

The Court: I will overrule the offer as not evidence in chief. If evidence at all, it will be evidence in rebuttal, after note is offered by defendant, if that should be done. Exception for the plaintiff, and bill sealed by order of the court. [3]

Defendant offered in evidence paper marked "A" which was produced by him, and identified by the plaintiff's subscribing witness, C. F. Keech, as the note upon which this suit is brought; for the purpose of sustaining the issue on the part of the defendant, and showing the discharge of the indebtedness evidenced by that note.

Mr. Wanner, of counsel for plaintiff: The offer is objected to as inadmissible for the purpose stated, or for any purpose. The instrument offered has not been properly or sufficiently proved to be the one in suit; and it has been specifically proved that it contains material alterations to the prejudice of the plaintiff, and to the benefit and advantage of the defendant, which have been put upon it since it was delivered to the plaintiff's intestate, and which, under all the evidence, appear to have been placed upon it while it was in the defendant's own possession; that the evidence already admitted shows that the payee . in this note died on May 8, 1896, and the note itself did not fall due for a year from its date. The evidence also shows that no payment has been made to the administratrix of this note, nor has she delivered it to the defendant or any one else. The evidence does not disclose the fact that this paper to-day comes from the legal possession of the defendant, William P. Helzer, who is competent to prove the present possession; and it is therefore not admissible as a paper coming from him to raise any presumption of payment, or extinguishment of the debt in any form. Inadmissible for any purpose.

The Court: Do you offer more than the face of the note, Mr. Niles?

Mr. Niles: No, sir.

Mr. Wanner: It is specially objected to the offering of the face of the note, because on the back of it is an indorsement prejudicial to the plaintiff, and which would necessarily go to the jury, if the face of it were offered.

The Court: I will admit the offer of the face of the note. The indorsement on the back of it is not offered or admitted, and cannot be considered by the jury as evidence for the defendant. Exception for the plaintiff, and bill sealed by order of court. [4]

Mr. Niles proposed to prove by the witness on the stand, William A. Miller, Esq., that this note, "A," was delivered to him by his client, William P. Helzer, some time shortly after the death of Melchoir Helzer, and that it has been in his possession ever since; that on or about May 12, William P. Helzer delivered to him this note, "A," and that it has been in his, the witness's, possession up to the time of this trial, when he handed it to the defendant, who produced it in court; that it has been in the possession of the witness or of the defendant ever since; and, further, that shortly after the institution of this suit, and before the first trial, the witness, with the defendant, produced this note in Mr. Niles's office, and that upon the instruction of Mr. Miller and Mr. Niles, as his counsel, William P. Helzer ran his pen through the name, for the reason that he was instructed that he could not destroy the note, as it might be required for evidence, and that he should cancel his name, as it might be lost, or get out of his possession and be used against him; for the purpose of showing the possession of the note by the defendant as here produced, and the circumstances of the cancelation of the signature.

Objected to by Mr. Wanner as not the best evidence of possession, or proper evidence of possession, the defendant himself being in court, and a competent witness to prove possession at the time it was offered, and to prove possession by his counsel; and the offer as made does not establish legal possession on the part of William P. Helzer of that paper. Objected to as inadmissible for the purpose offered.

The Court: I will admit the offer and give the plaintiff an exception. [5]

Mr. Niles: We offer to prove by the defendant that at the

time of his father's death he had in his possession at his house —the witness's house—this paper, " A," and has had it continually in his possession, or in the possession of his counsel for him up to the present time; for the purpose of sustaining the issue on the part of the defendant, and showing that the obligation evidenced thereby is discharged.

Objected to by Mr. Wanner as inadmissible for two reasons: first, because the witness is incompetent to testify to anything except what occurred immediately after and since his father's death; and, second, because the paper itself and the other evidence offered here by the defendant so far is not evidence of payment; it raises no presumption of payment, and this offer is therefore inadmissible.

The Court: The question is whether or not you can prove what occurred at the time of the death.

Mr. Wanner: Yes.

The Court: It certainly does not mean before. I will admit the offer. [6]

Mr. Wanner proposed to prove by Ella Faust, the witness on the stand, that about the beginning of 1895, in a conversation with the witness, William Helzer made use of the following language, in the presence of the husband of the witness also. He said, " Smalls had given a raise of a cent on a barrel; because his father did not give him the benefit of that cent right away, he was mad at his father, and said, ' He won't make anything off me by being so damned stingy, because,' he said, ' many a crooked piece I could use, and many a cracked hoop I can put in a barrel; and, if it don't suit me, I will chop it up.' And he did say, ' I will get even some day; ' and he said, ' Never mind, I will get my hands on him some day; and what I get my hands on it will be mine, then I will fool him,' or words to that effect; " for the purpose of showing the animus of the defendant toward his father, and his intention to obtain and keep anything that he might be able to .get.

This is offered in rebuttal of the testimony of the defendant, which was offered to show payment and satisfaction of the note, and to show rightful legal possession of it.

Objected to by Mr. Niles as not proper legal evidence for the purposes offered, or any of them; that the purpose to show animus is an illegal one; and that the whole offer is too remote

and indefinite to be admissible, and is irrelevant, immaterial and misleading.

Mr. Wanner: Plaintiff also offers to follow this testimony by evidence that the defendant on the day of his father's death, and on the second day following it, was on the premises in the room where the chest was kept in which Melchoir Helzer's papers were contained, and that on Tuesday following his death he made an extended search throughout the entire house; to show his opportunities for obtaining possession of this note in suit.

Mr. Niles: The same objections are renewed.

The Court: I will overrule this offer, and give the plaintiff an exception. [7]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (3–7) rulings on evidence, quoting the bill of exceptions.

*Nevin M. Wanner*, with him *Eli Z. Strine*, for appellant.— That the defendant's possession of this note, acquired before its maturity, is not a good defense in this case is apparent from the following authorities: Eckert v. Cameron, 43 Pa. 120; Burbridge v. Manners, 3 Camp. 193; Mishler v. Reed, 76 Pa. 76; Patton's Admrs. v. Ash, 7 S. & R. 116; McIntyre v. Kennedy, 29 Pa. 454; Weakly v. Bell, 9 Watts, 278; Gorgerat v. McCarty, 1 Yeates, 95–100; Connelly v. McKean, 64 Pa. 118; 2 Greenleaf on Evidence, sec. 527.

The fourth assignment of error is based on objections to the admission of the note when it was offered in evidence by the defendant. It was defaced and materially altered by the cancelation of the maker's name and an indorsement on the back of it of the words, " Given to me April 2, 1896." The defendant has elicited the fact, under cross-examination of the subscribing witness, that these things were not on the note when it was delivered by the defendant to his father. It was admitted without explanation, though discredited by its condition, and by the testimony of the subscribing witness. This was manifest error under familiar rules of evidence: Hartley & Co. v. Corboy, 150 Pa. 23; Gettysburg Nat. Bank v. Chisolm, 169 Pa. 564; Citizens Nat. Bank v. Williams, 174 Pa. 66; Roth's Est., 150 Pa. 261.

*H. C. Niles,* with him *W. A. Miller* and *George E. Neff,* for appellee.—This action was clearly wrong. The exact situation supposed by Justice MITCHELL in his opinion when this case was in this Court before had arisen. Parol evidence had been admitted on the supposition that it was the best attainable, and it subsequently had indubitably appeared that the higher grade of evidence was within the reach of the plaintiff. It was the duty of the court to strike out the secondary and compel the plaintiff to produce the original with all its legal effects, which was within her power, upon pain of entire failure of proof and the direction of a verdict against her: Malson v. Fry, 1 Watts, 433.

OPINION BY MR. JUSTICE MITCHELL, October 6, 1899 :

At the former trial a note was produced by the defendant, but plaintiff declined to accept it as the note sued on, and nothing further was done in the way of establishing that fact. We were therefore obliged to reverse the judgment, 187 Pa. 243. On the second trial the defendant not only produced the note again, but had it clearly identified on the cross-examination of the subscribing witness. The court therefore had before it the case of a narr. on a note assumed to be lost and evidence given of its contents, followed by the production of the note and its identification by plaintiff's own witness. The evidence previously received on the theory of loss should then have been struck out on defendant's motion, and plaintiff declining to offer the note, there was nothing before the court on which she could recover. The defendant himself, however, put the note in evidence, accompanied by testimony that it was in his possession at the time of his father's death and had been ever since. There was no evidence either of payment or nonpayment of the note, the plaintiff offering none and the defendant being rendered incompetent to testify by the death of the payee. We have the question, therefore, on the legal presumption alone, whether the payee can recover on a judgment note which is in the hands of the maker, with no explanation how it got there after delivery.

Appellant argues that the circumstances are not sufficient to raise a presumption of payment, and cites a number of cases, beginning with Eckert v. Cameron, 43 Pa. 120. All of the

cases, however, refer to commercial paper, and the rule is thus stated by Greenleaf: " Where in the ordinary course of dealing, a security when paid is given up to the party who pays it, the possession of the security by the debtor after the date of payment is prima facie evidence that he has paid it. But the mere production of a bill of exchange from the custody of the acceptor affords no presumption that he has paid it, without proof that it was once in circulation after he accepted it: " 2 Greenleaf on Evidence, sec. 527. Commercial paper, therefore, is the exceptional case, and the reason for it is found in Eckert v. Cameron, supra, where it was held that a note discounted for the maker before maturity, but after an indorsement, raised a presumption in favor of the holder, not that it had been paid by the maker and reissued, but rather that the indorsement was for his accommodation. Greenleaf in support of the text above quoted cites the ruling of Lord ELLENBOROUGH in Pfiel v. Vanbatenberg, 2 Camp. 439, and in Connelly v. McKean, 64 Pa. 113, SHARSWOOD, J., commenting on that case, says, having proved that the bills were originally lent, " Why should not the possession of them by the acceptor after maturity raise the presumption that he had paid them? With the highest respect for so great an authority upon nisi prius law, I may be allowed to express a doubt as to the sufficiency of the reason. Contrary to established principle it presumes a fraud to have been perpetrated, when the natural presumption is that which consists with honesty." This is the precise ground on which the learned judge below ruled the present case. Whether there was a legal presumption of payment it was not necessary for him or for us to consider. What he held was that there could be no presumption from the bare fact of possession that it was unlawful, and therefore without some further evidence the plaintiff could not recover. In this he was right.

The evidence as to defendant's presence in his father's house, and also that offered as to his threats in his father's lifetime " to get even with him," etc., amounted to no more than a basis for suspicion in an unfriendly mind that defendant had wrongfully taken the note out of his father's room after death. The learned judge rightly held that it fell short of the proof necessary to permit the jury to find such wrongful taking as a fact.

The note was properly admitted in evidence. The cancelation of the signature was fully explained by disinterested testimony, and the writing on the back was not admitted. Had the case gone to the jury it would have been proper to cover the back of the note so as effectually to conceal the writing, or to have submitted to them a verified copy in place of the original with the objectionable indorsements. But as the judge directed the verdict on the absence of evidence on which the jury could properly find for plaintiff there was no error in admitting the face of the note.

Judgment affirmed.