# First National Bank, Appellant, *v.* Gerli.

*Banks and banking—Promissory notes—Discount—Action against payee indorser—Note made by cashier of discounting bank.*

1. When an ordinary person presents for discount, before maturity, a note made by himself and indorsed by the payee, the bank has the right to rely upon the presumption that he is the owner of the paper and that the payee is an accommodation indorser, and it may. pay the money to the party in possession of the note, or credit it to his account with safety. But where a cashier of a bank presents such paper to his own institution for discount, and the payee and indorser is a depositor of the bank who has been in the habit of doing business with it, the possession of the note by the cashier raises no presumption that he is the owner of the paper; on the contrary the presumption is that it has been handed to him for the purpose of discount for the depositor's credit.

2. In an action by a bank on a promissory note against the payee as indorser, judgment is properly entered for the defendant where it abpears that the note was made by the cashier of the plaintiff bank to another, and indorsed by the defendant payee, that it was presented by the cashier to the bank for discount, before maturity, that the payee indorser was a depositor of the bank who had been in the habit of doing business with it; that the indorser payee never received any value for the note from the bank and that the bank knowingly credited the entire proceeds of the paper to the personal account of its cashier.

Argued April 12, 1911. Appeal, No. 6, Jan. T., 1911, by plaintiff, from judgment of C. P. Columbia Co., Dec. T., 1908, No. 34, for defendant non obstante veredicto in

case of First National Bank of Bloomsburg v. Emanuel Gerli, administrator c. t. a. of the Estate of Joseph Ratti, deceased.    Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.    Affirmed.

Assumpsit to recover on a promissory note.    Before McCLURE, P. J., specially presiding.

The plaintiff averred in its statement of claim "that E. F. Carpenter on August 7, 1906 . . . . made and delivered to Joseph Ratti, now deceased, . . . . his promissory note, whereof the following is a copy: 'No. 7531, Bloomsburg, Pa., Aug. 7, 1906.    Four months after date I promise to pay to the order of Joseph Ratti, $5,000, five thousand dollars, at the First National Bank of Bloomsburg, Pa.    Due December 7, 1906.    Without defalcation for value received. · (Signed) E. F. Carpenter . . . . ;' that said Joseph Ratti on August 8, 1906, . . . . endorsed and delivered said note to the plaintiff, . . . . and that the said bank thereupon took and now holds the said note in due course, for value received; that when said note became due . . . ., said note was duly presented for payment . . . ., but that neither said E. F. Carpenter, nor any person or persons on his behalf did or would . . . . pay the said sum of money . . . .; that said Joseph Ratti . . . . had waived notice . . . .; by means whereof the said Joseph Ratti then and there became liable . . . ."

The testimony produced by the plaintiff, as to the circumstances surrounding the discount of the note, showed that the name indorsed on the back of the paper was the signature of Joseph Ratti.    The teller of the plaintiff bank testified, "Q. By whom and when was this note presented to the First National Bank for discount?    A. By Mr. Carpenter: Q. Can you tell me the date when it was brought into the bank by Mr. Carpenter for discount? A. On August 7, 1906.    Q. Who discounted the paper? A. I discounted the paper.    Q. That is part of your duties?    A. Yes, sir.    Q. In what capacity did Mr. Car-

penter bring this note in for discount?   I mean whether
as an individual or as an officer of the bank?   A. It was
handed to me by Mr. Carpenter, individual, to place in
my drawer for the purpose of discounting.   Q. The E. F.
Carpenter who was cashier of the bank is the same party
whose signature appears attached to the note . . . . ?
A. Yes, sir.   Q. As cashier of the bank Carpenter was your
superior officer?   A. He was.   Q. In connection with that
part of the work that you did, as I believe you stated
discount clerk, you were also subject to the order and
direction of Mr. Carpenter, the cashier?   A. I was.
Q. You have testified that on the August 7, 1906, Mr.
Carpenter presented to you this note for discount and
that he presented it to you in his individual capacity.
How do you know that?   A. That would be hard to
separate the two, whether he so specified at that time, I
have no recollection.   He handed it to me for his indi-
vidual credit.   Q. It was credted to his individual credit
by his direction?   A. Yes, sir.   Q. In other words you
acted pursuant to his instructions in discounting this
note?   A. Yes, sir.   Q. As a matter of fact . . . . Car-
penter, the cashier of the bank at that time had charge
of this transaction and directed what should be done
about it?   A. As cashier of the bank."   Testimony given
by Mr. Carpenter, the maker of the note, at a prior trial,
was introduced by the defendant, and showed,"Q. Who
did discount this paper for the First National Bank?
Who had charge of that transaction?   A. I did.   Q. In
your official capacity as cashier of that bank?   A. Yes,
sir."   The following admission appears upon the record:
"It is admitted by all parties that the proceeds of the
note in suit . . . . were, on the date of its discount,
placed to the credit of E. F. Carpenter in the First National
Bank . . . . and that no part of it was credited to Joseph
Ratti.   It is also agreed that such entry of credit was
made in the usual form and in the regular course of the
business of the bank . . . . This agreement, however,
not in any way to prejudice or deprive the defendant of

the right of denying or questioning the right or authority or propriety of the bank to make such application of the proceeds."

The defendant presented the following points: "1. It appearing from the testimony in this case that the note sued on was the promise of E. F. Carpenter to pay to Joseph Ratti, or order, the sum of $5,000, for value received; that the said note was indorsed by Ratti and discounted by the authority and under the direction of E. F. Carpenter, the then cashier of the plaintiff bank, the presumption would be that when the note was discounted it was for the benefit of Ratti, and that the proceeds ought to have gone to his credit. 2. It appearing from the testimony in this case that Carpenter, the maker of the note in question, as cashier of the plaintiff bank had charge of the discount of said note and directed that the proceeds thereof be placed to his individual credit, which proceeds on the face of the note he ought not to have received, there can be no recovery by the plaintiff in this case. 3. The note in question being on its face an absolute promise by Carpenter to pay Ratti or order $5,000 for value received; and plaintiff admitting that the proceeds of the note were not paid to or credited to Ratti, but that the proceeds were credited by the plaintiff bank to Carpenter, the maker thereof, and there being no testimony on the part of the plaintiff to show that Ratti's indorsement of said note was for Carpenter's accommodation, there can be no recovery by plaintiff in this case, and the verdict must be for the defendant. 4. Under all the evidence in this case the verdict of the jury must be for the defendant."

The trial judge directed a verdict for the plaintiff saying, "We think we will take the verdict and reserve a point, whether or not the plaintiff is entitled to recover. We will refuse the first three points of the defendant and reserve the last." Subsequently the court below filed an opinion in which it decided, "The defendant's points should have been affirmed and a verdict directed for the

defendant." Judgment non obstante veredicto was entered accordingly. Plaintiff appealed.

*Error assigned* was in entering judgment n. o. v. in favor of the defendant.

*Fred Ikeler,* with him *Clinton Herring,* for appellant.— The fact that the maker of an indorsed note has it in his possession, is not notice of its payment or extinguishment to one who buys it before maturity, but in itself raised a presumption that the note was for the accommodation of the maker: Eckert v. Cameron, 43 Pa. 120; Mishler v. Reed, 76 Pa. 76; Connelly v. McKean, 64 Pa. 113; Helzer v. Helzer, 193 Pa. 217; Mass. Nat. Bank v. Snow, 187 Mass. 159 (72 N. E. Repr. 959).

Although Carpenter got the note as cashier, to have it discounted for the credit of Ratti, and wrongfully diverted its use; nevertheless, the bank would not be charged with notice of that fact: Gunster v. Heat & Power Co., 181 Pa. 327; Innerarity v. Merchants' Nat. Bank, 139 Mass. 332 (1 N. E. Repr. 282); United Security Life Ins. & Trust Co. v. Central Nat. Bank, 185 Pa. 586; Sproul v. Glass Co., 201 Pa. 103; Chestnut St. Trust & Sav. Fund Co. v. Record Pub. Co., 227 Pa. 235.

*John G. Harman,* with him *Richard E. Dwight,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, July 6, 1911:

When this case was here before (225 Pa. 256), we said, "From the note itself it is clear that Ratti's indorsement was not for the accommodation of Carpenter. . . . The instrument, without parol testimony to vary it, is an absolute promise of Carpenter to pay Ratti $5,000 for value received. At the time . . . . Ratti delivered the note to him Carpenter was the cashier of the bank, and the presumption would be that when the note was discounted it was for the benefit of Ratti, and that the pro-

ceeds ought to have gone to his credit." It is now urged upon us that this conclusion of law should be reversed, for the reason that the proper legal presumption would be that Carpenter was the owner of the note and that Ratti was an accommodation indorser; and the appellant further contends that if this view is not taken, then, in the absence of evidence to show that the bank had actual notice of the fact that Carpenter was not the owner of the note, it should not be held liable for his wrongful diversion of the proceeds.

After a consideration of all the authorities called to our attention, the negotiable instrument Act of May 16, 1901, P. L. 194, and the rules of the law merchant, we discover nothing that requires a reversal of the view taken by this court upon the former appeal; in fact we find no written authority bearing directly upon the state of facts before us, either upholding or denying the rule of presumption then announced.

It is for the courts not only to administer the written law, but to ascertain and apply the underlying principles of right and justice to conditions not expressly provided for when they appear. None of the cases cited by the appellant in support of the rule, that when a maker presents an indorsed note for discount it is to be presumed that the payee is an accommodation indorser, and that the maker has possession of the note with power to receive the proceeds (Parke v. Smith, 4 W. & S. 287; Eckert v. Cameron, 43 Pa. 120; Mullison's Est., 68 Pa. 212; Mishler v. Reed, 76 Pa. 76; Connelly v. McKean, 64 Pa. 113; Helzer v. Helzer, 193 Pa. 217; Mass. Nat. Bank v. Snow, 187 Mass. 159), is an instance where the maker was the cashier and superior discount officer of the discounting bank, and where the payee and indorser was a depositor of the institution who would naturally present paper to such cashier in his official capacity for the purpose of discount; for that reason the general rule announced in these cases has no application to the facts at bar.

If the mere possession of commercial paper by one who

is cashier of a discounting bank would justify the application of the rule that, "where the instrument is no longer in possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed," so that paper thus found would be presumed to belong to such a holder in his individual capacity, every man dealing with a banking institution would be obliged actually to take the currency from the bank, instead of having it credited on his account, for fear the cashier would make away with the proceeds of paper handed to him for discount. A rule of law which would admit of the possibility of such a situation, would be impracticable, intolerable and contrary to the dictates of right and justice; further, it would afford no adequate protection to the mercantile world, and such security is the guiding thought back of all the principles governing the rules applicable to commercial paper. The provisions of the negotiable instrument act were never intended to be so applied.

When an ordinary person presents for discount, before maturity, a note made by himself and indorsed by the payee, the bank has the right to rely upon the presumption that he is the owner of the paper and that the payee is an accommodation indorser, and it may pay the money to the party in possession of the note, or credit it to his account with safety. But where a cashier of a bank presents such paper to his own institution for discount, and the payee and indorser is a depositor of the bank who has been in the habit of doing business with it, the possession of the note by the cashier raises no presumption that he is the owner of the paper; on the contrary the presumption is that it has been handed to him for the purpose of discount for the depositor's credit. Such was the rule laid down on the previous appeal in this case, and there was no competent evidence produced at the trial under review sufficient to overcome this presumption.

It was admitted that Ratti never received any value for the note from the plaintiff bank, and that the bank knowingly credited the entire proceeds of the paper to

the personal account of its cashier. Under the circumstances disclosed by the record, neither Chestnut St. Trust & Sav. Fund Co. v. Record Publishing Co., 227 Pa. 235, nor Gunster v. Heat & Power Co., 181 Pa. 327, governs the facts at bar. In these cases there was nothing on the face of the transaction to suggest scrutiny, and if an investigation had been made, ample apparent power to issue the paper and to receive or control the proceeds would have been found vested in the party who perpetrated the fraud; while here, under the law as we have ruled it, the note bore evidence that it belonged to the payee and indorser, and had the bank inquired it might have discovered that its cashier had no power to direct a diversion of the proceeds to his own credit. No more does United Security Life Ins. & Trust Co. v. Bank, 185 Pa. 586, control the present case; there we expressly said, "Of course it is to be noted that this is not the case of an act done by an agent authorized, or apparently held out to the world as authorized, to do it, such as the illustration in the argument of the appellee of the receipt of a depositor's money by the receiving teller of a bank. There the act being within his authority is the act of the bank which would therefore be responsible though the teller subsequently embezzled the money." None of the cases cited by the appellant rules the present one; on the facts in this case, the loss, if any, must fall upon the plaintiff bank and not upon the defendant's estate.

Since the court below entered judgment in favor of the defendant, the question of the competency of Carpenter as a witness, to show that Ratti had waived notice of nonpayment, is not properly before us and will not be passed upon.

The assignment of error is overruled, and the judgment is affirmed.