ALBANY,
Oct. 1828.

McBride
v.
Hagan.

McBRIDE and others *vs.* HAGAN & BARRETT.

*A partner cannot do any act under seal, to affect the interests of his co-partner, except it be to release a debt. Where one of two partners enters into a submission in the name of himself and his co-partner, without the assent of the co-partner, the submission is valid as to him, but void as to his partner. In an action against him individually, he could not gainsay his bond, but in a joint action against him and his partner, on a plea of non est factum, the defendants would be entitled to a verdict. It accordingly was held, in an action of assumpsit against two partners, where a submission and award were offered in evidence* for the purpose of disproving an item in an account rendered, that the submission having been entered into by only one of the partners, and the action being against both, under the statute authorizing proceedings against joint debtors, that such evidence was inadmissible, and that, whether offered *directly* in an action on the bond, or *collaterally* in another action, because in either case it affected the rights of a person not a party to the submission, and to whom the law afforded protection from the consequences of such act. Parties may submit a *single item* of a long account to arbitration, and the award, if regular, will be valid as to the subject submitted. Where arbitrators transcend their authority, their award *pro tanto* will be void; but if that which is void affects not the merits of the submission, the residue will be valid.

THIS was an action of assumpsit, tried at the New-York circuit, in December, 1827, before the Hon. William A. Duer, one of the circuit judges. The plaintiffs declared against the defendants, under the statute authorizing proceedings against joint debtors, stating Hagan to be taken on process issued against him and his partner, and Barrett not found. The declaration contains the common money counts, an *insimul computassent*, and a count for work and labor. The plea is the general issue. From the testimony, it appeared that the defendants, who are co-partners in trade at New-Orleans, were employed by the plaintiffs, merchants residing at New-York, to purchase cotton, according to instructions contained in a letter of the date of 6th April, 1825. The defendants made purchases in various parcels, and shipped the same to the plaintiffs, and on the 15th July, 1825, rendered their account, debiting for advances, charges and commissions, $277,547,30; crediting for bills of exchange drawn on, and accepted by the plaintiffs, &c., $277,233,30, and claiming a balance of $314. The last item on the debit side of the account, was 1000 bales of cotton, charged at $107,911,56, which parcel, with other cotton, was forwarded from New-Orleans in the ship *Bowditch*, and arrived at N. York about 18th June, 1825. Accompanying this last parcel was a letter from the defendants to one of the plaintiffs, in the following words: "New Orleans, May 23, 1825. Mr. John Flack, dear sir: Enclosed is invoice and bill of lading for 1190 bales cotton, the samples of which, certified by the differ-

ent brokers, go by the vessel, and we have no hesitation in saying they have been fairly and correctly taken. Should there be demand for France, we would strongly recommend your offering this cargo to a French purchaser, or shipping it to the Havre market. The whole parcel is in fine order, and in superior packages, and the quality of the cotton very suitable for the French manufacturers. Respectfully your obedient servants, Jno. Hagan & Co." About the 25th June, 1825, the ship, with her cargo, which had not been unladen at New-York, was despatched by the plaintiffs to Havre in France, consigned to the house of Edward Quesnel L'Aine, which house had an agent in New-York, to whom one sixth of the thousand bales was sold by the plaintiffs, at the invoice costs and charges, previous to the vessel leaving N. Y. On the 31st August, 1825, an arbitration was agreed upon between the plaintiffs and Hagan, one of the defendants, in relation to the parcel of 1000 bales of cotton, and a submission, *under seal*, entered into by the plaintiffs on the one part, and by Hagan on the other, who executed the same in his proper name, and as attorney for Barrett, his partner, without having a power of attorney for that purpose. The questions submitted to the arbitrators were, whether the purchase made by the defendants of the 1000 bales of cotton, was or was not warranted by the instructions received by the defendants from the plaintiffs; and if the purchase was not warranted by the instructions, then, whether the plaintiffs had sustained any, and what damage thereby; and the parties bound themselves to observe such award as should be made of and concerning the matters in difference, and all claims and demands whatsoever arising or growing out of the same. The arbitrators awarded, that all disputes and differences between the parties, relative to the matters submitted, should cease; that the purchase of the 1000 bales of cotton was not warranted by instructions; that the same *be taken to account* of the defendants; and that the plaintiffs had not sustained any damage, by reason of the unwarranted purchase of the same, inasmuch as by the same remaining for account of the defendants, the damage or loss, if any thereon, would be sustained by the defendants.

On the trial of the cause, the plaintiffs produced the account current rendered by the defendants; and for the purpose of disproving the item on the debit side of the account for 1000 bales of cotton, amounting to $107,911,56, offered in evidence the submission and award: insisting that that item should be stricken from the account, and claiming the balance which would then appear by the account to be due to the plaintiffs. To the admission of this evidence the counsel for the defendants objected, and the judge rejected the same. The plaintiffs excepted to the decision of the judge, and submitted to a nonsuit. The cause now came before the court on the bill of exceptions.

*Ketchum,* for plaintiffs. The submission and award were competent evidence to shew that an item in the defendant's account should be deducted; for though the title to the 1000 bales of cotton was not directly submitted, it was involved in the question, whether or not the cotton was purchased pursuant to instructions. If so purchased, it was the property of the plaintiffs; if not, it was the property of the defendants; and the arbitrators having decided it to be the property of the defendants, it was not a proper item of indebtedness in the account. Although the title did not pass by the award, the defendants are estopped by it from saying that the cotton was the property of the plaintiffs. (3 *East,* 15. 2 *Cowen,* 650. 7 *T. R.* 449. *Tidd's Pr.* 755.) The plaintiffs' right of action was not merged in the submission and award. By adjudging the property to remain in the defendants, and that the plaintiffs had not sustained any damage in consequence of the purchase contrary to orders, the right of the latter to enforce their claim for money had and received remained open. The award was collateral to, and not the foundation of the action. It gave no right of action, but settled a question in controversy between the parties, by which their rights were ascertained in relation to the advances which had been made. The award is supported by the facts of the case. The letter of advice accompanying the cotton, shewed that the defendants considered the cotton their own, and directed the disposition of it. The value of the cotton, at the time of the

arbitration, could not be known. Accounts had not, and could not have been received from France, by which the loss of the plaintiffs on the purchase could have been ascertained. A better disposition could not have been made of the matter in controversy, than was made by the award in this case.

The award not having been admitted in evidence, it is not competent to the defendants to question its validity. Had the defendants intended to have reposed themselves on this point, they should have permitted the award to have been given in evidence, and then shewn its invalidity. But it is not invalid. It responds to the questions submitted ; and though the arbitrators award what would be the conclusions of law from the decision of the main questions, the award will not therefore be avoided. Awards of arbitrators are favored by courts, and are liberally construed. Though bad in part, they may be good for the residue ; and when the part of an award that is void is not so connected with the subject matter as to affect the justice of the case, it will be held void *pro tanto* only.

*G. Griffin,* for defendants. This case presents the question, whether one partner can, by submission *under seal,* submit a matter in controversy affecting the interests of his copartner. Great as is the power of one partner to bind another by his acts, there is an exception as to sealed instruments. A *specialty* is out of the course of commercial transactions, and therefore it is, that one of a firm cannot execute a customhouse bond, or give a bond and warrant of attorney to confess judgment, binding upon the firm. For the same reason, he cannot bind his copartner by submission *by seal,* (3 *Bing. R.* 101, 11 *S. & L.* 150, *Holt's N. P.* 141,) though it is admitted he may without seal. (12 *Serg. & Rawle,* 243.) The fact of Hagan only being taken does not alter the case. This is a suit against Hagan and Barrett, and not against Hagan alone ; Barrett would be affected by a judgment in this suit. Evidence of indebtedness by one, in a suit against two, is not admissible.

The award is a nullity ; and if so, the cause will not be sent back to the circuit. The arbitrators exceeded their authority. They adjudged the cotton to the defendants, when

the question submitted to them was the amount of damage, if any, sustained by the plaintiffs in consequence of the purchase contrary to orders. There could be no damage but on the assumption that the plaintiffs had accepted the cotton. They, in fact, did accept it, sold one sixth, and, in conjunction with their new partner, shipped it to France. The award could not operate in *rem*. The plaintiffs had lost the control over one sixth of the cotton, and the defendants, under the award, could not have sustained an action of trover against the purchaser. To give this effect to it, would be to change the title of a stranger in a chattel by an award, which cannot be done, even between the parties. (15 *East*, 99. 13 *Johns. R*. 264.) This part of the award cannot be rejected as surplusage, because, for this cause, the arbitrators allowed no damages to the plaintiffs. If, then, they had no right to pass upon the property and change *its* ownership, the award is void for not passing upon the matters submitted. (5 *Cowen*, 197. 3 *Cowen*, 7.) It is void, too, because not final. (*Kyd on Awards*, 208.) It leaves the question of damages open ; why otherwise this suit ?

It is admitted the plaintiffs had no right of action given them by the award ; and if so, it is contrary to the elementary principles of law, that a party shall be permitted to do indirectly what he cannot do directly. Assumpsit cannot be brought on a submission under seal, nor can a plaintiff in such action rely on a specialty to support his claim. (2 *Tidd's Pr*. 755. *Kyd on Awards*, 277, 280. *Caldwell on Awards*, 188, 2 *Saund*. 62, *b. n.* 5.)

*D. B. Ogden*, on same side. This is a joint action against the defendants ; the evidence must therefore establish a joint, and not a separate liability. The submission and award were not evidence against Barrett, unless Hagan had power to bind him. An express authority is not pretended, and the power does not result from the relation subsisting between them. A partner may do any act affecting the interests of the partnership authorized by commercial law ; but not a case is to be found in which it was holden that one partner can bind another by *seal*, which is the creature of the common law, and unknown to the commercial law.

The cotton was out of the country at the time of the submission, and the manifest intention of the parties was, to ascertain the damages, if any, to be paid to the plaintiffs. To this the arbitrators entirely neglected to respond, and instead thereof, adjudged the cotton to be placed to the account of the defendants. Now, though an award will be sustained if good in part, that rule applies only where the two parts, the good and the bad, are entire and distinct, wholly unconnected, and have no dependence upon each other. (*Willes,* 64. 13 *Johns. R.* 264. 2 *Cowen,* 649.) The order made as to the disposition of the cotton, goes to the very merits of the controversy. But if the award is good, as far as the arbitrators acted within the scope of their authority, it is conclusive in favor of the defendants. The arbitrators say that the purchase was not warranted by the instructions, and decide that the plaintiffs had not sustained any damage thereby.

The monies of the plaintiffs were expended by the defendants, as their agents, in the purchase of cotton. Where a factor exceeds his orders, the goods may be turned on his hands; instead of doing so in this case, the goods were accepted, part sold, and the residue shipped to a foreign port. Before suit, the cotton should have been tendered to the defendants, or they should have been sued for misfeasance in misapplying the funds of the plaintiffs, and such was considered their liability at the time of the submission.

*Slosson,* in reply. As a general rule, one partner cannot bind another by seal; but here was at least *prima facie* evidence of execution by both, and that evidence was supported by the presumption that Hagan had authority. (4 *D. & E.* 313. 9 *Johns. R.* 285. *id.* 306.) Hagan could not deny his own seal; and having executed the submission as the attorney of Barrett, was precluded from alleging that he had no authority. (1 *Phil. Ev.* 171. 1 *Starkie's N. P.* 128.) The plaintiffs are bound by the award, and to render it mutual, it should be held binding on the defendants.

The issue was between the plaintiffs and Hagan; Barrett was not a party to it. The verdict would have been no evi-

dence against him, and the judgment could not have affected his person or individual property. The partnership property of the parties only would have been liable to execution, and this Hagan had a right to control. The evidence offered was competent ; the defendants were charged with monies had and received, they produce an account against it ; the plaintiffs offer a submission by one of the defendants, and an award in pursuance of it, for the purpose of shewing an admission of error in the account. Was it not competent to do so, and were the plaintiffs under the necessity of resorting to a special action on the instrument under seal to shew the error ? The submission and award are collateral to, and not the foundation of the action ; and the cases cited from 2 *Cowen*, 650, and 15 *Johns. R.* 497, support the position, that an award may be evidence of right, though not the foundation of an action.

The award is valid. Courts of justice view awards with indulgence, and are liberal in their construction. Arbitrations are domestic tribunals, which are favored as tending to terminate intricate disputes with very little expense to the parties, by judges of their own choosing. (14 *Johns. R.* 103.) Evidence *aliunde* will not be received to impeach or invalidate an award. (3 *Johns. R.* 367. 12 *Johns. R.* 311. 9 *Johns. R.* 42.) And it is no objection to an award, that it is against law. (7 *Cowen*, 185. 14 *Johns. R.* 105.) The rule that principals must disavow the acts of their agents, or that they will be bound by them, does not apply to *foreign* agents, (*Paley*, 28, *chapt.* 1, *part* 1, *sect.* 7,) and the defendants in this case, in reference to their distance from the plaintiffs, must be considered as foreign agents. The plaintiffs being heavily in advance for the defendants on the receipt of the cotton, disposed of a part of the cargo to reimburse themselves, as they had a right to do, in the character of factors. The court will not avoid the award on the intendment that the plaintiffs did not disavow the act of the defendants in the purchase of the cotton, *non constat* but the proof was given at the circuit ; the bill of exceptions only presenting such facts as are necessary to the decision of the

question of law which arose at the circuit. (8 *Johns. R.* 515. 2 *Caines*, 168.) When a factor transcends his authority in a purchase, the principal is not bound by his acts, and the property goes to the factor. The parties, therefore, by submitting the question of excess of authority, submitted the vital question, whose was the property of the cotton? If unauthorized, it belonged to the factor, otherwise to the principal; and the adjudication that the property should be carried to the account of the defendants, was but a consequence of the principal decision that the purchase was unauthorized.

ALBANY,
Oct. 1828.

McBride
v.
Hagan.

Again, the submission was not simply whether the purchase of the cotton was unauthorized; but the parties bound themselves to observe and keep the award which should be made of and concerning all claims and demands whatsoever arising or growing out of the same. The arbitrators had, therefore, the right to pass upon the incident, and say to whom the property should go. Where a general clause in a submission is followed by special words which accord with the general clause, the power of the arbitrators must be construed according to the special matter; but where a submission contains special words and concludes with general words, the general as well as the special words shall stand. (2 *Caines*, 327. 8 *Coke's R.* 154, *b.*) The rights of strangers are not affected by the award, if in the sale of a part of the cargo the plaintiffs are *pro hac vice* considered the factors of the defendants. But admitting it had such effect, that cannot be alleged as a reason for avoiding the award as between the parties. (*Watson on Awards*, 108, 9.) And the case in 15 *East*, supports this position. Nor can the fact of the cotton being shipped to France, operate against the plaintiffs; as in so doing, they acted as the agents or factors of the defendants, pursuant to the letter of advice received from them.

*By the Court*, SAVAGE, Ch. J. The questions presented by the bill of exceptions in this case, are, 1. Whether, under the circumstances, the submission and award were competent evidence? and 2. If competent, whether the award is valid?

It seems to be well settled, that one partner cannot bind his co-partner under seal. He may, indeed, discharge a co-partnership debt, under seal, but that authority arises not from any capacity to bind his co-partner in a manner to impose an obligation upon him, but from the power which each partner has over the partnership property, and partnership debts. This proposition does not seem to be contested by the plaintiffs' counsel; but they contend, that the submission and award were competent evidence to shew that one item in the defendants' account should be stricken from it. It seems proper, therefore, to look into the cases, and ascertain with precision what is the extent of the power of one partner to bind another by seal. The case of *Harrison* v. *Jackson, Sykes & Rushworth*, (7 *T. R.* 207,) was an action of covenant against three partners, upon an agreement under seal, signed by the defendant Sykes, in this form: "For Jackson, self and Rushworth, *W. Sykes.*" The agreement related to a partnership transaction, and was executed by Sykes, the other partners not being present. It was said upon the argument that Lord Mansfield had ruled at *nisi prius*, that for a partnership debt, one partner had authority to execute a bond for another; but the authority of that decision was not admitted by Lord Kenyon, who gave the opinion of the court. He admitted the authority of partners, according to the law merchant in mercantile transactions, but denied that any power existed to bind each other by seal, unless a particular power be given for that purpose; and adds, this would be a most alarming doctrine to hold out to the mercantile world. If one partner could bind the others by such a deed as the present, it would extend to the case of mortgages, and would enable a partner to give a favorite creditor a real lien on the estates of the other partners.

In the case of *Ball* v. *Dunsterville*, (4 *T. R.* 313,) the action was against two, upon a bill of sale executed by one of the defendants in the presence of the other, and by his authority, they being partners in this transaction, and using but one seal. It was objected, that the authority given by one to the other to execute a deed, should have been conferred by deed;

but the court held the execution good, and relied principally on the fact, that the deed was executed by one defendant for himself and the other, *in the presence of that other.* These decisions have been recognized by this court.

In the case of *Clement* v. *Brush,* (3 *Johns. C.* 180,) it was decided that a sealed note given by the defendant, in the name of himself and partner, though the sealed instrument was void as to the partner, it was good against the defendant, and extinguished the partnership debt for which it was given. And in *Markay* v. *Bloodgood,* (9 *Johns. R.* 285,) an arbitration bond, signed by one partner, where the other partner had approved it, was held to be valid, though that other was not present and assenting at the moment of execution, but was by in the store, though perhaps not in the same room where the bond was signed. In pursuance of the same principle, it has been held, that a bond and warrant of attorney to confess a judgment, signed by one of two partners for himself and partner, is void as to the partner not assenting, though for a partnership debt. On a motion to set aside such a judgment, (2 *Caines,* 254, *Green* v. *Beals,*) the motion being made by the partner who executed the bond and warrant, was denied. The court said, that on a plea of *non est factum,* a verdict must have been found for the defendants, and that relief would have been granted to the partner who had not executed the bond and warrant. They said a separate suit might have been sustained against T. Beals, who had executed the bond. And *Motteux* v. *St. Aubin,* (2 *Black.* 1133,) was referred to, where the court set aside a judgment against an infant, leaving it in force against his surety. The case of *Tom* v. *Goodrich,* (2 *Johns. R.* 213,) was decided upon the same principle. There Tom had become surety for a partnership debt, in a bond with one of the firm. He was compelled to pay the bond, and brought his action against the firm for the money so paid; but this court held, that the giving the bond extinguished the partnership debt, and converted the demand into an individual one, and therefore the plaintiff's only remedy was against the particular partner with whom he had executed the bond.

In the case of *Pierson* v. *Hooker*, (3 *Johns. R.* 68,) it was decided, that one partner may release, under seal, a partnership debt. Kent, chief justice, distinguishes this from the class of cases just referred to. He says, " Here was no attempt to charge the partnership with a debt by means of a specialty, but it is the ordinary release of a partnership debt." " Each partner is competent to sell the effects, or to compound or discharge the partnership demands : each has an entire control over the personal estate," &c. (*See* 17 *Johns. R.* 58. 15 *id.* 387.)

In the case of *Buchanan* v. *Curry*, (19 *Johns. R.* 137,) it was decided that one of two partners may discharge a partnership demand after a dissolution of the partnership. And further, if one partner enter into a submission to an arbitration in the name of both, and an award is made in favor of the partners, and if payment is made of the amount awarded and accepted by such partner, such payment operates by way of release by one partner, or as an accord and satisfaction, and is binding upon both partners. It follows from these cases, that a submission by one partner in the name of both, is valid as to the partner who executes the bond, but void as to the other who never authorized his name to be used in that manner. Should an action be brought against the partner who signed the bond, he cannot take advantage of his own irregularity ; but should an action be brought against both partners, upon a plea of *non est factum*, the defendants would be entitled to a verdict. The case of *Green* v. *Beals* shews, that a judgment entered upon a bond and warrant thus executed, would be held regular as to one, and irregular and void as to the other ; that the party whose name has been thus used may waive the irregularity, and sanction the use of his name ; that such sanction will be presumed from his silence ; and that a motion to vacate such judgment, when made by the partner alone who executed the bond, will not be listened to. The court in that case said further, that it would not be necessary to vacate the judgment, even on the motion of the partner whose name had been used without authority, but they would direct execution not to be served

on his person or property, and that only the interest of the partner who executed the bond in the partnership property, should be sold; thus giving perfect protection to the partner whose name had been used unwarrantably. This relief would be granted under the equitable powers of the court; but so long as the parties are contesting their legal rights, the rules of law alone must govern the court. According to the principles established by the cases referred to, had the award in this case been such as to give the plaintiffs a right of action upon it; had the arbitrators awarded to the plaintiffs as damages, the value of the 1000 bales of cotton, purchased by the defendants contrary to their instructions, the defendant Barrett could not be made responsible for it in any manner, but the defendant Hagan would be liable. Should the plaintiffs in such case bring a joint action against both, and only Hagan be taken, and plead *non est factum*, a verdict must pass for the defendants; but should the plaintiffs prosecute Hagan alone, and declare upon the bond as his bond, he could not deny it successfully. Again, had Hagan confessed a judgment, such judgment would extinguish the partnership debt, and Barrett would be protected from execution of every kind, even as to his share of the partnership property. Had the arbitrators awarded a sum of money to be paid by the defendants to the plaintiffs, such award must certainly be a security of as high a nature as a bond, if not higher, and, consequently, would extinguish the simple contract debt. The plaintiffs in that case would have had no remedy against the firm, nor would they have had any against Barrett, upon the bond of submission and award, as Barrett had never authorized his name to be put to it; the plaintiffs then could only look to Hagan.

It results, then, that one partner cannot do any act under seal, to affect the interests of his copartner, unless it is to release a debt. In the case of *Buchanan* v. *Curry*, a submission and award in favor of the firm, and an acceptance of the amount awarded, were held to operate as a release, or an accord and satisfaction; but no such consequence, I apprehend, results from the award in this case. Had the award in the case of *Buchanan* v. *Curry* been against the

Buchanans, it could never have been enforced against R. Bu-chanan, who had never assented to the submission ; but on the contrary, R. Buchanan would be exonerated from all claims of Curry against the firm : those claims would have been extinguished by the award, and W. Buchanan alone ·could be compelled to pay it. What is the effect of this award if valid ? The defendants have received·the money of the plaintiffs, to the amount of $107,911 56, which was a fair demand against the defendants. The defendants contend-ed that they had accounted for that sum by the purchase of 1000 bales of cotton : that is denied by the plaintiffs, and asserted by the defendants. It is submitted to arbitrators to decide, whether that cotton was purchased according to in-structions ; or, in other words, was it purchased for the plain-tiffs, or did the defendants, by neglecting to pursue their in-structions, make the purchase for themselves ? The arbitra-tors determine that the cotton was not purchased according to the instructions received by them from the plaintiffs. They did not, therefore, purchase for the plaintiffs. The defend-ants have, consequently, the above amount of the plain-tiffs' money in their hands to be accounted for ; and that sum, with interest, should have been the damages awarded to the plaintiffs, according to the facts appearing in this bill of exceptions. But the award says that the plaintiffs have sustained no damage, because the cotton purchased belongs to the defendants. This seems to me a *non sequitur*. Is it no damage to the plaintiffs that the defendants have in their hands $107,911 56, which remains unaccounted for ? The award seems to me to be a *felo de se ;* but if valid, it is so on-ly against Hagan, and cannot be enforced against Barrett. But it is said that this suit is virtually against Hagan alone, as Barrett has not been arrested, and, at all events, Hagan cannot defend himself upon the ground that Barret is. not liable ; that the submission was at least his deed, and the award is good against him. The case of *Sangster* v. *Maza-retto and others*, (1 *Starkie's Rep.* 128,) is referred to, as shew-ing that Hagan is concluded. That was an action against the defendant and three others, as acceptors of several bills of exchange : the other three defendants were resi-

dents abroad, and had been outlawed. The plaintiff, to prove a partnerrhip, produced a letter from the defendant, Mazaretto, admitting the partnership. It was objected that this defendant's admission could not bind the other defendants, and the promises were all laid as made jointly by the four defendants; but Lord Ellenborough held the evidence sufficient, inasmuch as in any future action by Mazaretto against his co-defendants for contribution, the record in the action against Mazaretto would not prove the partnership, but that must be proved by other evidence.

The very ground of this decision is, that the evidence can have no effect against any one but the defendant who made the admission. In that case, in consequence of the outlawry of the three joint debtors, the plaintiff was enabled to proceed against one as if he were a several debtor, and the judgment to be obtained, would be a lien on the property of the defendant who was arrested, and no other of the partners or joint debtors; neither could execution affect the property of any other. Our statute has varied the common law in this respect. It allows the plaintiff to proceed to judgment upon bringing in one joint debtor, and judgment is rendered against all. That judgment is a lien upon all the joint real estate of the defendants. Execution issues against all, and may be levied on all the personal property jointly held by the defendants, as well as the separate property of the defendant arrested. The principle of that case, therefore, when applied to this, would exclude the award. It seems to me, therefore, that as well the weight of authority as of argument, prove that the award offered in evidence was properly excluded. That it came in collaterally, can make no difference. If it be admitted at all, it is to affect the rights of a person who was no party to it, and to whom the law affords a protection from its consequences. If admitted in this way, it has precisely the same effect upon Barrett, as if a joint action were brought upon the arbitration bond; it must, therefore, be governed by the same rules of evidence.

2. The next question which I had proposed to examine is whether the award is valid? Perhaps the conclusion to which I have arrived, on the competency of the evidence of-

ALBANY,
Oct. 1828.

McBride
v.
Hagan.

fered, considering the award valid, may render the examina-tion of the latter question unnecessary. If I am correct in the opinion which I have formed, that the submission and award, if valid, are not proper testimony in this suit, then it is immaterial at present whether the award be good or not. If the award is void, then upon the plaintiffs' own shewing, there is a balance due the defendants. It may not be im-proper to remark, that it is no doubt competent for parties to submit a single item of a long account, and the award will, if regular, be valid as to the subject submitted. But in this case, it seems to me that the arbitrators misunderstood the object of the parties. The defendants had purchased the cotton. The plaintiffs had received it ; they had exercised an act of ownership over it, by selling one sixth of it. I ap-prehend, therefore, the title to the cotton was never submit-ted. The cotton was considered the property of the plain-tiffs ; but it was alleged by the plaintiffs that they had been injured by the purchase being made on terms different from those contained in the instructions. Had the plaintiffs in-tended to submit the question of ownership, they were put-ting it in the power of the arbitrators to decide a question of an amount exceeding $100,000 ; and yet they took a bond of submission in the penalty of $20,000. This circumstance is not conclusive, but certainly is strong to shew the extent to which the plaintiffs then estimated their damages. They probably calculated their damages by the probable loss on the cotton. That part of the award which declares that the cotton shall be taken to the account of the defendants, is certainly not warranted by the submission, and is therefore void. An award may be good in part and bad in part ; and if that which is void does not affect the merits of the submis-sion, the residue will be valid. If we strike out of this award that part which is clearly not warranted by the submission, then the award decides nothing in favor of the plaintiffs ; the award then stands, that the defendants were not warrant-ed in purchasing the cotton, but the plaintiffs had sustained no damage. This might all be true for aught appearing in the case ; for instance, the defendants might have been lim-ited to a certain price, but they gave much more ; the pur-

chaser, then, would have been unauthorized by their instruc-tions. But if the plaintiffs accepted the cotton, and sold it at a large profit, the award would be true; but it would give no right of action. It seems to me, therefore, that in any point of view, the judge was correct in rejecting the award.

The motion to set aside the nonsuit should be denied.