Jas. T. Shields, S. J.,
delivered the opinion of the Court.
The complainant and the defendant are brothers, and the sons of William Mathews, now deceased.
It appears that the father was the owner of a tract of land, and that by a parol contract, he agreed to convey it to defendant; that afterwards he changed his mind, and actually conveyed it to complainant. Thereupon, the defendant filed a bill in the Chancery Court at Greeneville, against both the complainant and his 'father, the said William, the object of which was to have the said conveyance set aside, and a specific execution of the parol contract which had been previously made; or, if this could not be done, to establish an account against the said William, and to have a decree for the sale of a sufficient quantity of said land to satisfy the same. The bill was answered by the defendants, with some particularity as to the matters of the account between the parties, which need not be here stated.
Pending this suit, Joseph and William agreed to submit the matters really litigated to arbitration; but their father did not join in the agreement. This agreement was written, and after citing the pendency of the suit, states that the said Joseph and William agree “to draw *671 said suit out of court and to have the matters in dispute arbitrated; that Solomon “shall lay before the arbitrators an account of all the charges that he has against William Mathews;” and that Joseph should “'exhibit an account against Solomon for everything that the said William Mathews has charged against the said Solomon. The agreement farther provides for the selection of arbitrators, and binds- the parties to submit to their award.
In pursuance of this agreement, an award was made in favor of Solomon, that Joseph and William Mathews pay to him the sum of four hundred and nine dollars— two hundred in six months, with interest from the date of the award, and the remainder in twelve months, with interest, and that the costs be equally divided between the three.
The submission did not provide that the award should be made the judgment of the Court; but, on the contrary, provided that the bill should be dismissed; which seems to have been done before the award was made.
Upon the award, two suits were instituted before a Justice of the Peace — one upon each amount awarded, as it became due. In both cases, Solomon Mathews obtained judgment, from which appeals were prayed and granted, to the Circuit Court, where the same are nov/ pending.
This bill was filed for the purpose of having the said award declared void and set aside, and the two suits pending on the same perpetually enjoined.
The" bill charges that said award was procured by gross fraud and imposition, on the part of said Solomon *672 Mathews; that the complainant made out and presented his father’s account substantially as it had been stated in the answer to the bill; inclusive of a certain wagon, particularly mentioned and charged in the answer; that after several witnesses had been examined, the arbitrators adjourned until the next day; that on the morning of the second day, and before the arbitrators resumed the consideration of the matters submitted to them, the said Solomon took the complainant aside, and said that he was surprised at the charge of the wagon in the account; that the said William had sworn to both the answer and the account; that in the answer he had claimed compensation for only the use of the wagon, and in the account he had charged for the wagon itself; “that the old man had perjured himself” in swearing to the correctness of the one or the. other, and that he would prosecute the “old man” for perjury, unless the charge for the wagon, and also a charge for labor done by “the old man,” and mentioned in the same answer, were both stricken from the account.
The bill further charges that there was no substantial difference between the said answer and account, but this did not occur to him at the time; and that being greatly alarmed by this unnatural and unfeeling threat by his brother to prosecute their father, who was far advanced. in life and in feeble health, and to save him from .the vexation and annoyance of such a charge, he agreed to, and did, strike out said two items, but for which no award would have been made in favor of the said Solomon. For this reason,, and because the complainant was not indebted to the said Sol.cm.on, so that *673 the said submission was, as to complainant, without consideration; and because the said William, not having signed the agreement of submission, was not a party thereto, so that the arbitrators exceeded their authority in making a joint award against the said William and complainant, it is insisted that the award is null and void.
The bill does not excuse the defendant from answering on oath, and the answer in response substantially denies the allegations of the bill as to the circumstances under which the said two items were stricken from the account.
Upon a review of all the facts and circumstances which surrounded the parties at the time of the submission, and of the questions involved in the pending litigation, we think the complainant in the present suit had an interest in the matters submitted sufficient to support his agreement to abide by and perform the award of the arbitrators.
And we are further of the opinion, that the fact that the award is in part against the father of Joseph and Solomon Mathews, who was not a party to the submission, does not render it void as to Joseph. The arbitrators did not transcend their authority in this particular; but an award may be good in part and bad in part. It is void only pro tanto if that which is void affects not - the merits of the submission. Such, we think, is the case now before us. If there were nothing more in the way, we should hold the award binding as to the complainant. McBride v. Hagan, 1 Wend., 326;- *674 Clement v. Durgin, 1 Grreenl., 300; 6 Greenl., 247; 13 Johns, 264; 2 Cow., 638; Cald. on Arbitration, 276.
But we think the proof fully sustains the allegations ■ •of the bill, as to the suppression of the two items in the account, on the trial before the arbitrator, and this after giving to the answer the force and effect it is entitled to as evidence. It is very clearly made out that ■the complainant struck out these two items because of the threats made by the defendant to prosecute the fath•er for the crime of perjury. There was no' foundation in fact for the charge of perjury. The father in his answer had stated that Solomon was liable to account to him for the use of the wagon; or, if lie retained it and some other property mentioned, for the value of the whole; and the wagon not being returned when the account was made out, the value of it was entered as one of the items. The father was an old man, nearly ninety years of age, and the complainant; in part in consequence of apprehension of real danger, (not understanding the matter,) and in part to save his aged father from the terrible annoyance, in his .old age, of a prosecution for felony, and this at the instance of his own child; yielded the two items, and withdrew them from the consideration of the arbitrators.
The . jurisdiction of a court of equity in matters of awards, and to interfere within certain bounds and set them aside, in cases of fraud, mistake, accident, or the corrupt and oppressive conduct of parties or arbitrators, is well established. Cald. on Arb., 275, .et seq; 2 Sto. Eq., 1451. And we are of the opinion that the exercise *675 of that jurisdiction is highly proper in the case now before us.
No question can be made as to the effect of the judgment before the Magistrate, they having both been vacated by the appeals to the Circuit Court. Certainly, where evidence is suppressed and an award obtained by such means as' were resorted to in the present case, looking to the peculiar relations of the parties; to the fact that the threat was made against a father in extreme old age, and made by his own son, and without grounds, and brought to.bear upon the mind of another son, then acting for and representing the father, no court could hesitate to set aside the award as having been obtained by the fraudulent, corrupt and oppressive conduct of one of the parties.
This was the view of the case taken by the Chancellor. We think it was correct, and affirm the decree.