IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI.

### MARCH TERM, 1875, AT ST. LOUIS.

---

THIRD NATIONAL BANK OF ST. LOUIS, Respondent, *vs.* THOMAS ALLEN, *et al.*, Appellants.

1. *Banks—Checks—Forgery of—Payment by mistake—Notice of forgery money may be recovered back, when.*—A bank having paid to a stranger a check drawn upon a sister bank, collects from the latter the amount of the check. The paper turns out to have been forged, but at the time of payment, neither bank is aware of, or has reason to suspect the fact. The next day the paying bank ascertains the forgery, and on that day or the one succeeding, notifies the other bank of the fact. *Held*, that the notification is given in a reasonable time and that the money may be recovered back.

The general rule is that if in view of all the circumstances the party is *not* negligent in ascertaining or communicating notice of the fraud, he may so recover. And it seems that *no other general limitation as to time of notice can be adopted.*

The above case is distinguishable from one in which the paper presented purports to be the note of the bank itself—where the bank may be remediless.

310

*Appeal from St. Louis Circuit Court.*

*Dryden & Dryden,* for Appellants.

I. The notice was too late. (2 Pars. N. & B., 598 ; 9 Barn. & Cr., 908, 9 ; 3 *Id.*, 428.)

II. Both parties being equally ignorant and innocent, plaintiff must remain the loser. (Gloucester Bank vs. Salem Bank, 17 Mass., 42 ; Price vs. Neale, 3 Burr., 1355 ; Smith vs. Mercer, 6 Taunt., 81.)

*Sharp & Broadhead,* for Respondent.

One who pays money on forged paper, by discounting or cashing it, can always recover it back, provided that he has not contributed to the mistake by his own fault or negligence, and that by an immediate or sufficiently early notice he has enabled the party to whom he paid it to indemnify himself as far as possible. (2 Pars. N. & B., 597 ; Wilkerson vs. Johnson, 3 Barn. & Cr., 434.)

What is reasonable time will depend on circumstances. At all events, it is not the day of payment, nor the day after. Reasonable diligence is all that can be required. (2 Pars. N. & B., 599 ; Canal Bank vs. Bank of Albany, 1 Hill, 287 ; McElvoy vs. South. Bank Ky., 14 La. An., 458.)

In the case of United States Bank vs. The Bank of Georgia, (10 Wheat., 339) the case was not parallel. The Bank issued the notes in question. The Bank was bound to know its own notes. So in the case of Gloucester Bank vs. Salem Bank (17 Mass., 33), the banking company paid notes on which the name of the president had been forged, and it was held that the bank was bound to know the signature of its president.

WAGNER, Judge, delivered the opinion of the court.

This was a suit to recover the amount of a check drawn on and paid by the plaintiff, but altered before payment.

The facts, as they appear from the record, are substantially these : Thomas Rhodus & Co., a business firm keeping their accounts with the plaintiff, drew a check on it for $20, pay-

able to a stranger. On the day of the date of the check, a stranger, representing himself as an employee of Rhodus & Co., appeared at the counter of the defendants, who were private bankers, and negotiated for the purchase of a quantity of gold to be paid for in currency, and then retired. Afterwards during the same day this stranger returned to defendant's banking house, bringing with him what purported to be the check of Rhodus & Co., payable to defendants for the exact amount in currency required to pay for the gold previously negotiated for, and delivered the check to the defendants, who then and there delivered to him the gold contracted for. This occurred during business hours on Wednesday. The next day (Thursday) the defendants presented and the plaintiff paid the check, the defendant's name being indorsed thereon. The check paid was the same that was drawn by Rhodus & Co., and which before it reached defendants was altered by substituting $368.38 for twenty dollars, and the name of defendants as payees instead of the original payee. There was nothing in the appearance of the check, nor in the conduct of any one connected with the transaction calculated to excite suspicion. The plaintiff's evidence showed that it discovered the forgery the next day after it paid the check and immediately on the same day notified the defendants of the forgery, whilst on the other hand the defendants' witnesses testified that they received the notice the second day after payment.

The case was tried before the court without the intervention of a jury, and at the instance of the plaintiff three declarations of law were given : First, The defendants were bound to the use of ordinary diligence in the discovery of the forgery, and if it appeared from the evidence that the defendants were guilty of negligence in failing to discover the forgery, and that plaintiff paid the amount of the draft to the defendants in ignorance of the fact that it was a forgery, then plaintiff was entitled to recover ; Second : If plaintiff paid the draft to defendants without knowing it to be forged and without any reasonable cause to believe it to be a forgery, but sup-

posing it to be a genuine draft for the amount of money called for on its face, the plaintiff is entitled to recover, provided notice was given to defendants of the fact within a reasonable time after the discovery of the forgery ; Third : If the notice of the fact of forgery was given to defendants on the day it was discovered by plaintiff, although it may have been two days after the payment of the draft, the court will hold that such notice was within a reasonable time. The defendants then asked the court to declare the law to be that upon the evidence and the facts admitted by the parties the plaintiff was not entitled to recover. This declaration was refused and a judgment was then rendered for plaintiff.

It seems to be well settled that money erroneously paid, or allowed, under mutual ignorance or mistake of facts, may be recovered back. The cases founded on mistake seem to rest on this principle ; that if parties, believing that a certain state of things exists, come to an agreement with such belief for its basis, on discovering their mutual error, they are remitted to their original rights. (Mowat vs. Wright; 1 Wend., 335, 62, per Savage, Ch. J.) As money paid under a mistake of fact may always be recovered back, one who pays money on forged paper, by discounting or cashing it, can always recover it back, provided he has not materially contributed to the mistake himself, and has given a sufficiently early notice of the mistake to the other party after he has discovered it. As to what is a sufficiently early notice, or in other words, reasonable time, there has been considerable difference of opinion. In the earlier English cases it was strictly held that the payor could not recover back the money unless he gave notice on the very day of the payment, and before any change of circumstances. (2 Pars. N. & B., 598, and note.)

But in this country this doctrine has not generally prevailed. The American courts have mostly repudiated it, and the accepted rule is that the payor must be allowed a reasonable time to detect the forgery and demand restitution. What will amount to a reasonable time will greatly depend on the circumstances of each particular case. It is conceded, at all

events, that it is not necessarily the very day of payment, nor the day after. For one who passes a forged bill, it is said, cannot avoid his liability on pretence of delay in detecting the forgery and giving notice; and reasonable diligence is all that can be required. Therefore where no negligence is imputable to the drawee in failing to detect the forgery, want of notice within the time which ordinarily charges previous parties on negotiable paper is excused, provided it be given to the holder as soon as the forgery is discovered. (2 Pars. N. & B., 599; Canal Bank vs. Bank of Albany, 1 Hill, 287; U. S. Bank vs. Bank of Georgia, 10 Wheat., 333; Bank of Commerce vs. Union Bank, 3 Comst., 230; Espy vs. Bank of Cincinnati, 18 Wall., 604.)

In the case of Espy vs. Bank of Cincinnati (18 Wall., 604), Stall and Meyer, customers and depositors with the First National Bank of Cincinnati, made their check on that bank for the sum of $26 50, payable to the order of Mrs. E. Hart, and delivered it to a stranger to all the parties to the transaction, out of which the controversy arose. The man erased the name of the payee, and the amount for which it was given, and inserted the name of "Espy, Heidelbach & Co., bankers and brokers," and also the sum of $3,920, and passed it to Espy, Heidelbach & Co., in payment of bonds and gold which he purchased of them. The check was paid by the bank through the clearing-house, and the next day the fraud was discovered, and the bank made a demand on Espy, Heidelbach & Co. for the amount as paid through a mistake. Judge Miller writing the opinion of all the judges, after making the above statement of facts, said: "If this were all the case there could be no doubt of their right to recover. The principle that money so paid under a mistake of the facts of the case can be recovered back is well settled, and in the case of raised or altered checks so paid by banks on which they were drawn there are numerous well considered cases where the right to recover has been established, when neither the party receiving nor the party paying has been in any fault or blame in the matter."

In that case as in this, the fraud was not discovered till the day after the payment was made, and it is not shown when the notice was given, and no point appears to have been made upon it. The case is the latest on the subject and gives the great weight of the national tribunal in opposition to the early English cases, and in favor of the predominant American doctrine.

In the case of the Canal Bank vs. Bank of Albany (1 Hill, 287), the payment was made on a forged indorsement, on the 28th of March, 1839, and on the 7th day of June thereafter the plaintiff called on the defendants and asked to have the money refunded, notifying them, at the same time, of the forgery; and it was decided that they were entitled to recover. Mr. Justice Cowen examined the English cases and strongly disapproved of them, and in the course of his opinion said:

"But I am not willing to concede that delay in the abstract, as seems to be supposed, can deprive the party of his remedy to recover back money paid under the circumstances before us. It is said that the defendants had indorsers behind them; and by delay they were prevented from charging them by giving reasonable notice. Admit this to be so. The plaintiffs did not stand in the relation of a holder. They were the drawees, and advanced the money by way of payment. They would never, therefore, think of notice to the defendants till they accidentally discovered the forgery. If there had been any unreasonable delay after such discovery, another question would be presented." (S. P. Bank of Commerce vs. Union Bank, 3 Comst., 230; Kingston Bank vs. Ettinge, 40 N. Y., 391.)

In Koontz vs. Central National Bank, (51 Mo., 275) the draft was paid by mistake in July and no notice was given to the defendant of the error till the following December, and we held that the plaintiff might still recover. The cases of the U. S. Bank vs. Bank of Georgia, (10 Wheat., 333) and the Gloucester Bank vs. The Salem Bank, (17 Mass., 33) are strongly relied on by the counsel for the defendants in this court. They were both cases where the banks had received

their own notes in payment. In the United States Bank vs. Bank of Georgia, the parties had had mutual dealings, and the latter received a quantity of its own notes in payment of a balance. It appeared that part of these notes were forged, and it retained them nineteen days without notifying the plaintiffs of the fact. The court admitted that the modern authorities, in a strong manner, asserted that a payment received in forged paper or in base coin was not good, and if there was no negligence in the party he might recover back the consideration; but they distinguished the case. They proceeded upon the theory that the notes in question were not the notes of another bank or the security of a third person, but they were received and adopted by the bank as its own genuine notes in the most absolute and unconditional manner. They were treated as cash, and carried to the credit of the plaintiff, in the same manner as if they had been genuine notes or coin. It was deemed that considerations of public convenience and policy would authorize a distinction between cases where a bank receives forged notes purporting to be its own, and those where it receives the notes of other banks in payment or upon general deposit. It has the benefit of circulating its own notes as currency, and commanding thereby the public confidence. It is bound to know its own paper and provide for its payment, and must be presumed to use all reasonable means, by private marks and otherwise, to secure itself against forgeries and impositions. Under such circumstances, the receipt by a bank of forged notes, purporting to be its own, must be deemed an adoption of them. It has the means of knowing if they are genuine; if these means are not employed, it is evidence of that neglect of duty which the public have a right to require. But whilst laying down the above propositions as controlling the particular case, the doctrine was recognized, that in relation to forged bills of third persons received in payment of a debt, a recovery may be had if notice is given within a reasonable time.

The case of the Gloucester Bank vs. The Salem Bank, was where forged notes of the latter had been paid to the former, and upon a subsequent discovery the amount was sought to be recovered back. No notice was given of the doubtful character of the notes until fifteen days after their receipt, and no actual averment of forgery until about fifty days. The notes were in a bundle when received, which had not been examined by the cashier until after a considerable time had elapsed. The court said : " The true rule is, that the party receiving such notes must examine as soon as he has opportunity, and return them immediately. If he does not, he is negligent, and negligence will defeat his right of action. This principle will apply in all cases where forged notes have been received, but certainly with more strength where the party receiving them is the one purporting to be bound to pay. For he knows better than any other whether they are his notes or not, and if he pays them or receives them in payment, and continues silent after he has had sufficient opportunity to examine them he should be considered as adopting them as his own."

Neither of these cases are in opposition to the principles of law announced previously in this opinion, but they are rather confirmatory of them. The court has found here that the plaintiff paid the forged draft under a mistake of fact, and its right to recover is undoubted.

The discovery of the forgery was made on the next day after payment, and whether the defendant was notified on that day or the next succeeding, in either event we think it was within a reasonable time. A point has been raised here that there was no offer to return the draft, but that does not appear to have been raised in the pleadings or passed upon in the court below.

We think the judgment should be affirmed ; the other judges concur.