ROBERT A. BATTY, ADMINISTRATOR, ETC., APPELLANT AND PLAINTIFF IN ERROR, V. THE BOARD OF COUNTY COMMISSIONERS OF ADAMS COUNTY ET AL., APPELLEES AND DEFENDANTS IN ERROR.

Corporations: JOINT STOCK COMPANY: CONVEYANCE OF PROPERTY. Certain owners in severalty of a tract of land laid the-

same off into a town site, and organized a company to sell the lots. There was no conveyance to the company of the interests of the several owners of the land, but each shareholder received his quota of stock, and the articles of association provided that deeds for lots sold were to be executed by the president and secretary. *Held*, 1st, To be a joint stock company; 2d, That as each partner had authorized a conveyance by the president and secretary, his title passed by such deed.

THIS case came here on appeal by plaintiff, from Adams county, GASLIN, J., presiding. After being so docketed, a petition in error was filed by plaintiff, and without further action the cause was argued and submitted at the January term, 1882. At the July term, 1882, the court of its own motion ordered a reargument, which took place at the present term.

*Batty & Ragan,* for plaintiff.

I. Neither the charter nor powers of attorney conveyed the legal title. But suppose the court should conclude that a number of persons, being tenants in common of realty, might organize themselves into a corporation, as was done in this case, and thereby convey their interests in lands to the corporation. There are no words in this charter that could be tortured into "apt words of conveyance;" nor do the words used show an intention to convey. Again, all the surrounding circumstances and the powers of attorney executed subsequently to the organization of the corporation by the tenants in common prove conclusively that they did not intend to convey nor understand they had conveyed to the corporation. Why these powers of attorney to the president and secretary if it was intended the charter should operate as a conveyance? We find no language in its charter permitting this corporation to act as attorney in fact for any one, and had it done so the acts would be *ultra vires*. Angell & Ames, 256.

Then if the language of the charter itself does not amount

to a conveyance, and all the subsequent acts of the owners evidence no intention to convey nor idea on their part of having conveyed, we fail to perceive by what process the charter is to be construed as a conveyance. Did the powers of attorney convey the title of this property to the corporation? Being instruments in writing, they must speak for themselves, and they say: "Have made, constituted, and appointed, and by these presents do make, constitute, and appoint the president and secretary of the Hastings Town Company our true and lawful attorneys."

The letters of attorney do not attempt to confer any power whatever on the corporation, and the most that can be said is, they attempted to make attorneys in fact of the individuals holding the offices of president and secretary, and these individuals, and they only, were empowered to convey. Such being the case, they should have executed the conveyances in the name of their principal, and signed their own names as attorneys in fact, in order to make such conveyance a deed of the principal. 3 Wash. Real Prop., 249, § 12. 16 Mass., 42. 7 Id., 14. 6 Pick., 409. 64 N. Y., 357.

II. The power of attorney made by Carl to the first corporation was revoked by him in 1877, and the deed made to the county in 1878. We admit he was bound by the records, and what did they disclose? 1. A patent for the w. ½, s.-e. ¼ 12, 7, 10 to Micklin. 2. Deed from Micklin to Farrell for an undivided one-half of this realty. 3. Deed, Farrell to Carl, an undivided one-fourth. 4. Farrell to Smith, an undivided one-fourth. 5. Micklin to Farrel, an undivided one-fourth; and in all the conveyances that follow, Carl still holds his one-fourth interest, and no instrument appears to convey that away. He sees the charter of the Hastings Town Company, signed by Carl and others, but nothing in this leads him to suspect that Carl by signing it either intended to convey or did convey his interest to the corporation. He also finds on

record a power of attorney from Carl to the president and secretary of the corporation, authorizing them to "sell and convey" his interests in this block; but there is no deed on record showing that such president and secretary have sold and conveyed this block, and a little further on, he finds on record a revocation of this very power of attorney. Having made this search, he purchased. Did prudence or law require him to do more? The county was affected with notice of the revocation of the power of attorney, for it was on record, in the custody of its own officer at the taking possession of this block. Barada, when he purchased, had no actual or constructive knowledge of the claim of the county to this block. He found a clear title of record in his grantor. Found him paying and this county receiving taxes on this very block. No one was in possession. It was vacant, as were hundreds of other blocks in the same city. He took the deed, paid his money, and it now remains to be seen by what rule of law or equity the county shall take this property from his heirs.

*O. B. Hewett* and *O. P. Mason*, for defendants, cited: Boone Corp., p. 47. Angel & Ames, § 169. 4 Wait's Actions and Defenses, 164. 7 Id., 119, 120. Id., 117. 20 Ohio, 241. 2 How., 76. *Fisher v. Field*, 10 Johns., 495. 2 Story's Equity, 439. 2 Wash. Real Prop., 69. *New York v. Schuyler*, 34 N. Y., 30. Morawetz on Private Corporations, §§ 2, 8, 61, 62–73, 211. *Thomas v. Dakin*, 22 Wend., 109.

MAXWELL, J.

This is an action of ejectment to recover a one-fourth interest in block fifteen in the city of Hastings. The court below found the issues in favor of the defendants, and dismissed the action. The only error assigned in the motion for a new trial is that "the findings of fact made by the

court and the judgment therein are contrary to law and the evidence in the case."

It appears from the record that the original town site of Hastings, consisting of the west half of the south-east quarter of section 12, town 7, range 10 west, in October, 1872, was owned in common by Walter M. Micklin and Thomas E. Farrell, who at that time had said land surveyed and platted and the plat recorded. Conveyances of a joint interest in said site were made to various parties, so that on the 17th of April, 1873, the title to the same was held in common by James D. Carl, William L. Smith, William B. Slosson, Samuel Slosson, Thomas E. Farrell, and Walter M. Micklin. On that day the parties organized into a joint stock company, and were duly incorporated as such under the name of the Hastings Town Company. The object of said corporation as set forth in the third article of incorporation was to sell and dispose of the lots in the town site of Hastings for the mutual benefit of the members.

The fourth article provides that the capital stock of the company shall be four thousand dollars, in shares of $100 each, to be paid in at the organization. The fifth article provides for the election of five directors, who shall elect from their number a president, secretary, and treasurer. The eighth article limits the indebtedness of the corporation, and provides that "the agent shall in no case sell more than twenty lots to one party without the consent of all the directors." The tenth article provides that "the president shall have power to convey the property of the corporation, such conveyances to be countersigned by the secretary," and the fifth article of the by-laws is to the same effect. The articles are signed by the parties, and are attested and acknowledged with all the formalities of a deed. The estimated value of the town site at that time appears to have been $4,000, and stock to that amount was immediately after its organization issued by the company and delivered to the stockholders in proportion to their respec-

tive interests. The testimony shows that this stock was actually worth $100 each share. No conveyance of their individual interests in the land was ever made by the members by formal deeds to the corporation, but it at once appointed an agent and proceeded to sell lots in said town, all of the deeds to purchasers being executed by the president and secretary. In 1876 the company made partition of the lots remaining unsold among the stockholders in proportion to the amount of stock owned by each member, the deeds being executed by the president and secretary of the corporation, John D. Carl, under whom the plaintiff claims title, receiving deeds with other stockholders. In 1875 the corporation entered into a contract with Adams county to convey to it block fifteen for county purposes in case the county seat was located at Hastings. The proof shows that this proposed conveyance or dedication materially enhanced the price of lots in the town, of which all the stockholders reaped the benefit. In 1878 the county seat was located at Hastings, when the president and secretary of the corporation conveyed said block to Adams county. In 1876 Carl conveyed the lots assigned to him, and also one-fourth interest in block fifteen and other property, to John Barada. The other property referred to was conveyed to Barada by the president and secretary of the Town Company in 1878. In 1879 he instituted this action, and, having died in 1881, the action was revived in the plaintiff's name.

There was also a power of attorney, irrevocable in its terms, from each of the stockholders and wife authorizing the president and secretary to convey their interest in the land. The question presented is, did the deeds from the president and secretary of the corporation convey the title to the lands in controversy? That this was the effect intended by the parties, all the evidence tends to prove. This organization, although designated a corporation, was in fact a joint stock company or *quasi* partnership for the

6

purpose of disposing of the lots in question. These lots became in fact partnership property, from the sale of which each shareholder received his proportion of the amount received.

In *Fereday v. Wightwick*, 1 Russ. and Myl., 45, it is said that all property acquired for the purpose of a trading concern, whether of a personal or real nature, is to be considered as partnership property, and is to be applied accordingly in satisfaction of the demands of the partnership. *Fall River v. Borden*, 10 Cush., 458. But it is said that there has been no conveyance of the legal title by the individual members of this company, hence they still hold the legal title to said lots.

Real property acquired with partnership funds for partnership purposes is regarded in equity as personal estate so far as the adjustment of partnership rights and payment of partnership debts are concerned. In the view of a court of equity it is immaterial in whose name the legal title to such property may be taken, whether in the name of one or all the partners, as the person holding the legal title does so for co-partnership purposes. *Dupuy v. Leavenworth,* 17 Cal., 263. *Buckley v. Buckley*, 11 Barb., 45. *Kendall v. Rider*, 35 Id., 100.

In *Fowler v. Bailey*, 14 Wis., 140, it is said "it is a familiar principle of the law of partnership that when partners intend to give real estate the character of partnership property, and when they use it and treat it as such, then it will, like all other assets of the firm, be applied to the payment of the partnership debts, notwithstanding the paper title may happen to be in one partner or appear to be in all as tenants in common." *Fairchild v. Fairchild*, 64 N. Y., 471. But while real estate purchased with partnership funds and held as partnership property will be treated as personal property, yet ordinarily in the absence of express authority one partner cannot convey the whole title to real estate unless the entire title is vested in him.

*Chester v. Dickison,* 54 N. Y., 1.    *Van Brundt v. Apple-gate,* 44 Id., 544.    But an absent partner may be bound by a deed executed by a co-partner in the firm name if there was either a previous parol authority or a subsequent parol adoption of the act.    3 Kent Com., 48.    *Skinner v. Dayton,* 19 Johns., 513.    *Cady v. Shepherd,* 11 Pick., 405–6.    *Bond v. Aitkin,* 6 W. & S., 165.    And a deed executed by a partner in the firm name is effectual to convey all his interest.    *Clement v. Brush,* 3 Johnson's Cases, 180.    *McBride v. Hagan,* 1 Wend., 326.    *Nunnely v. Do-herty,* 1 Yerger, 26.    *Waugh v. Carriger,* Id., 31.    *Morris v. Spence,* 4 Harring., 428.    *Jackson v. Stanford,* 19 Ga., 14.    Therefore had each partner executed deeds in the firm name without authority from his co-partners to pur-chasers of lots, the purchasers would have acquired the title of all the partners.    The same result would follow from the express authority from each partner conferred upon the president and secretary to execute deeds in the name of the co-partnership.    That this authority was given not only in the articles of association, but by a separate irrevocable power of attorney by each stockholder and wife is clearly established.    And this power was recognized as continuing by all the members of the company, including John D. Carl, by accepting and relying upon deeds made to them by the president and secretary for such lots as were award-ed to them on partition.    Carl had thus expressly stipu-lated and agreed as to the manner in which this property was to be conveyed, and this authority was recognized by Barada by accepting from the officers named deeds for lots in said town.    We therefore hold that the president and secretary of said organization were the proper parties to make deeds for lots sold by said company; and that a deed by a partner to firm property was subject to all the con-tracts and liabilities of the partnership.    And as the com-pany had at the date of the deed to Barada entered into a contract with the county for the transfer to it of said block,

he took his title subject to said contract. It is probable, also, that sufficient is shown to prove a dedication, but we need not determine that point. There is no error in the record, and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.