## Parke *against* Smith.

The rule of evidence which excludes a party to a negotiable instrument from testifying against its validity, is only applicable to cases where the instrument has actually been negotiated in the usual course of business.   But if it be established by other proof that the negotiation was not in the usual course of business, then a party to the instrument, not otherwise interested, is competent to testify all his knowledge of the transaction.

ERROR to the District Court of *Allegheny* county.

James Parke against Samuel Smith, Samuel Royer, A. N. M'Dowell, and John Turbet, trading in the name of Smith, Royer & Co.   The plaintiff claimed on a note dated 24th of May 1837, for $2632, payable two years after date, drawn by Samuel Hall, payable to Smith, Royer & Co., and endorsed by Smith with the name of the firm, Smith, Royer & Co.   On the 27th of May 1839, it was protested, and notice given, &c.   It was admitted the defendants were partners in the iron business.   It was contended for Smith that the note was for a loan by Parke to Hall at an usurious rate of interest, and for the other defendants that the endorsement was made by Smith without authority from the other partners, not in the course of business of the firm, but to accommodate the drawer, who passed it to the plaintiff, and as surety for him, without consideration to the firm.

The defendants read a copy from the record of a mortgage by Samuel Hall to James Parke, containing a recital that it was to secure the note in question and several others; that Parke had loaned the money to Hall on said notes, which were some of them renewals of former notes, to secure Parke and the endorsers for any money they may have paid or shall have to pay, and a covenant by Parke to re-convey or enter satisfaction for any money paid as it should be paid, so that it was executed by both Hall and Parke.

The defendants also showed the record of a suit by Parke against Hall, and judgment on several notes, including this one,

[Parke v. Smith.]

for $8544.66, of April term 1841; also a release to Hall by defendants, executed for the defendants by S. Smith at the bar; and offered Hall as a witness. The plaintiff objected because the release was not valid, and because a party could not be heard to invalidate a paper to which he gave currency by his name, and which he put in circulation; but the court admitted him. The mortgage showed that the maker passed it to Parke and not the endorser. The plaintiff also objected that this could not be given in evidence under the general issue in an action of *assumpsit*. The court overruled the objections and sealed a bill of exceptions.

The witness, Hall, proved that the mortgage was given to secure this and three other notes, amounting together to $2350; that the difference between that and $2632, the amount of the note, was usury; that no consideration passed between him and Smith, Royer & Co.; that he never endorsed for them; that the endorsement was to accommodate him and written by S. Smith in the absence and so far as he knew without the knowledge of the other partners; that he had no conversation with the other partners about endorsing for him, except once he applied to Turbet, who was not willing, and it was not done; that Smith knew he was using the paper to raise money.

GRIER, President, instructed the jury that including the usurious interest did not make the note void, but that the plaintiff could recover from Hall the amount really due, striking off the sum allowed for usurious interest. But, on the other ground of defence, the court said that Parke, according to the evidence, did not receive this note from the defendants, but from the maker, Hall; therefore it was known to him the endorsement was merely as sureties; one partner cannot bind a firm by signing their name as sureties, and in a matter not of business, and in which they have no concern, unless he has previous authority, or there is a subsequent ratification; that the credit of the witness was for the jury; if his testimony was believed, the plaintiff could not recover; that the jury must find against all the defendants or none; they could not in this case find against Smith alone.

The errors assigned were to the admission of the testimony and to the law arising on that testimony.

*M'Candless*, for plaintiff in error, argued that the drawer of the note was incompetent to testify against its validity; and cited 1 *Rawle* 196; 2 *Whart.* 50; 9 *Serg. & Rawle* 229; 9 *Watts* 144. A note signed by one partner with the name of the firm, is *primâ facie* the note of the firm, and the holder is not bound to inquire of all the individual members of it. 2 *Penn. Rep.* 160; 24 *Eng. Com. Law* 226, 227; 1 *Wash. C. C.* 100; *Bayly on Bills* 95; 7 *Serg. & Rawle* 218.

*Craft* and *Findlay*, contra, argued that it was only in cases

[Parke v. Smith.]

where the note or instrument was actually and fairly negotiated in the usual course of business, that parties to it were incompetent to testify; but here the defence was that it was not so negotiated, and evidence *aliunde* was given to support the allegation; after which the witness was competent. 2 *Watts* 268; 5 *Whart.* 340; 4 *Serg. & Rawle* 109; 2 *Dall.* 196; 2 *Binn.* 165; 1 *Serg. & Rawle* 102; 4 *Rawle* 311; 6 *Serg. & Rawle* 113; 10 *Ib.* 290; 9 *Ib.* 229; 3 *Wend.* 415. This was a made note, and not one of business, which was well known to the plaintiff who received it from the drawer and not the endorser. It is no part of the business of a mercantile firm to endorse notes as sureties for others; and the note being in the hand of the drawer is sufficient notice of the nature of the endorsement. 18 *Wend.* 478; 5 *Conn. Rep.* 574; *Story on Part.* 131, 206; 2 *Stark.* 347: 1 *East* 53; 8 *Vez.* 544; 2 *Cox* 12; *Carey on Part.* 37; 7 *Wend.* 159.

The opinion of the Court was delivered by

HUSTON, J.—In the case of *Baird* v. *Cochran*, (4 *Serg. & Rawle* 397), it was decided that to exclude parties whose names are on the bill, but not parties to the suit and not interested, the note must not only be negotiable but actually negotiated in the usual course of business; and in *Hepburn* v. *Cassel*, (6 *Serg. & Rawle* 115), the same doctrine is distinctly repeated. In 1 *Rawle* 197, it is said, " the rule is undoubtedly restricted to paper actually negotiated;" but that case is put on the ground that the witness could not, by his own evidence, remove an objection to his own evidence apparent on the paper; and, I take it, says the Chief Justice, he could not. In *Gest* v. *Espy*, (2 *Watts* 268), this case is reviewed and commented on. It is again said the rule is " that a party to a note cannot impeach it when it is strictly negotiable *and has been negotiated;*" and again, " if the contest is between the original parties, or between the drawer and a person who has not become the holder by the usual mercantile endorsement, it is granted there is no ground for the application of the rule :" again, " it is necessary for the defendant to prove by testimony *aliunde* that the original parties remained the same."

Here it was proved by the mortgage signed by both parties, that the note, instead of being passed by the endorser, was given by the maker to the plaintiff. The bare statement shows it was not received in the usual course of business; and if authority had been necessary, the cases cited, 8 *Cowen* 687, and 18 *Wend.* 478, are full to the point. Where the maker offers an endorsed note in payment of a contract, and especially for a past debt, it is not offering it in the usual course of business, and is, at least, *primâ facie* evidence that the endorser is a surety for the maker. If the transaction were real, the payee would be owner of the note, and he alone would have a right to pass it away : while the note is in the hands and is the property of the maker, although it is endorsed

[Parke v. Smith.]

by the payee, yet the parties can support no suit on it against each other; when it is passed to a third person, a right of action on it arises; but if it is passed by the maker, the payee and endorser is liable as surety or guarantor of the maker, and the holder who received it from the maker, may write a guaranty over the blank endorsement. Or if the endorsement was on it when the note was made and offered by the maker for his own debt, it has been held the endorser may be held as surety without other evidence. See cases last cited, and *Bayly on Bills* (last edition) 46–48, and cases in the notes.

Parke then received the note in question, not from Smith, Royer & Co., but from Hall, and he considered and knew the endorsement in fact and law was only as surety for Hall. But this court decided in *Sutton* v. *Irwine*, (12 *Serg. & Rawle* 13), that one partner could not, by signing the name of the firm, bind the other partners by a guaranty, not in the course of their business, unless such act was authorized or subsequently sanctioned by them; and in *Hamill* v. *Purvis*, (2 *Penn.* 177), the same point is decided. One partner cannot bind the firm by an instrument under seal; this is the general rule; one, if not the only, exception, is a release; 3 *Kent* 24; *last ed.* 48; 3 *Johns.* 68; 1 *Wend.* 336; 4 *Binn.* 375.

The objection that this could not be proved on the plea of *non assumpsit* was rightly abandoned.

Judgment affirmed.