## Mullison's Estate.    Stevenson's Appeal.

1. M. executed a mortgage to B. without consideration, for the purpose of having it sold to raise money for M. ; B. held the mortgage as trustee for M. and was bound to dispose of it according to M.'s direction.

2. A personal engagement by the mortgagee to raise the money in the future would be a consideration for the mortgage.

3. A positive agreement by B. to sell the mortgage and hold the proceeds for M. would be only a gratuitous promise.

4. The mortgage therefore was not available against subsequent lien-creditors from its date, but only from the time money was advanced upon it.

5. An assignee of B. of the mortgage having notice that it was without consideration to B. but for the mere purpose of raising money for M. by its sale, would be put upon inquiry as to whether there were liens intervening between its date and his purchase.

6. Offering a note by the maker for discount is primâ facie evidence that it is an accommodation note.

7. If the mortgagor sells a mortgage, it is a circumstance to put the purchaser on inquiry.

8. The assignee of the purchaser of the mortgage is in the same position as the purchaser.

9. The assignee of a mortgage takes it subject to all the equities between the original parties, but not to any secret equities not arising out of the instrument.

March 17th 1871.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia*: No. 158, to July Term 1870.   In the matter of the distribution of the proceeds of the sheriff's sale of the real estate of John R. Mullison.

The money was produced by a venditioni exponas to December Term 1869, issued by George Williams against Mullison, under which a lot of ground on which were erected five buildings was sold; the money paid into court was $5231.63, and George D. Budd, Esq., was appointed auditor to distribute it.

The facts in the case, as shown by the report of the auditor, are these: On the 5th of March 1868, Mullison became owner of the ground sold under the execution, and afterwards divided it into five lots for building.   About the 7th of September 1868, Mullison contracted by parol with William Henderson to erect five buildings for him on the lots.   On the 21st of September, and before the commencement of the buildings, he executed and delivered to Thomas J. Butterworth five mortgages of the ground, two for $1000 each and three for $800; the mortgages were recorded the same day.   There was no consideration from Butterworth to Mullison, but the mortgages were made for the purpose of raising money for Mullison, as he might need it for the houses, and there was no agreement that Butterworth should raise money for Mullison.   On the 22d of September the contract with Henderson was consummated by writing, and early in October the work on the buildings was commenced.

On the 3d of December, Charles E. Willis advanced to Mullison $1150, to secure which Mullison executed a judgment-bond upon which judgment was entered in the District Court of Philadelphia. On the same day, Butterworth, by Mullison's direction, assigned the mortgages to Mr. Willis as collateral security for the payment of his bond. This assignment was acknowledged on the day of its date, but not recorded until January 20th 1870. The mortgages remained in the possession of Henry Haines, Esq., the agent and conveyancer of Mr. Willis, until some time in April 1869, when Mullison called at Mr. Haines's office in his absence, and, without his knowledge, obtained the mortgages from a clerk, who supposed that Mullison was authorized to receive them. In the meanwhile the buildings were progressing towards completion, and Mullison becoming more and more pressed for money, he proceeded to use the mortgages as a means of raising money. He therefore applied to Mattys Kaas, a licensed pawnbroker, who referred him to his conveyancer, Isaac M. Post, Esq.; he, at the request of Kaas, examined the properties and pronounced them good security for the amount. On the 6th of May 1869, Butterworth, at Mullison's order, executed assignments of the mortgages to Kaas, which were acknowledged on the same day, and recorded November 6th 1869. The assignments were absolute on their face and for the consideration of $2800. " On the same day Kaas entered into a collateral agreement with Mullison, wherein the assignment of the mortgages was recited, and a condition inserted that if a certain debt of three thousand three hundred dollars, incurred by Mullison to Kaas, should be paid within six months from that date, then the said assignment to be null and void, but if otherwise then the said mortgages to become the absolute property of the said Mattys Kaas. Five hundred dollars of this sum, represented interest, or possibly a bonus, to be paid for the negotiation of the mortgages. This whole transaction appears to have been carried on by Mullison. He had possession of the mortgages. He gave information as to the condition of the property. He produced the surveyor's certificate of survey. He obtained from Butterworth assignments in blank, in which afterwards the name of Kaas was inserted. He signed the collateral agreement with Kaas, and finally, upon a written order of Butterworth's, received the whole $2800 consideration-money, and receipted for Butterworth for the same. The money thus obtained, was applied to the payment of the debts contracted in the building operation. * * * There seems to have been no effort made to discover the true relation between Mullison and Butterworth. Mr. Kaas * * * paid his money in good faith, believing that he had purchased mortgages which were good liens on the property and subject only to the ground-rent. On the 5th of November 1869, he assigned the mortgages for a valuable consideration to Wash-

[Mullison's Estate.]

ington J. Stevenson, the present holder. Prior to the execution and delivery of this last assignment, Mr. Stevenson was notified by Richardson L. Wright, Jr., Esq., the attorney in fact of the mortgagor, that the creditors of the latter' would contest the payment of the mortgages, and, acting under the advice of Mr. Wright, Mr. Mullison declined to give a certificate of no set-off." * * * The judgment in favor of Willis, and the mortgages as assigned to him by Butterworth, were assigned to Henry Haines, Esq., who in the distribution claimed under these assignments.

The auditor, after further discussing the facts and examining the law, proceeded : " From this review of the cases, the auditor finds : that a mortgage or judgment may be given to cover future advances, and as between mortgagor and mortgagee such advances will be covered, no matter when made. If there be no binding agreement to advance, and the rights of third parties have intervened, then only such advances will be covered as have been made prior to intervening encumbrances ; subsequent advances only having a lien from the date of their payment ; but if there be an agreement obligatory upon the mortgagee or judgment-creditor, executed contemporaneously with the mortgage or entering of the judgment, all advances made in pursuance of this agreement and conformably to it, will have a lien as of the date of the record of the mortgage or entering of the judgment. There is no distinction in this respect between encumbrances arising by judgment and those by claim filed under the laws relating to mechanics and material-men ; and this whether the claim be filed prior or subsequently to the advance made, for the claim reverts to the commencement of the building and takes precedence of everything that was not a valid subsisting lien at the time the ground was broken.

" Now, to apply these principles to the facts of the present case. As between Mullison and Stevenson there can be no question. But the rights of three judgment-creditors and many mechanics and material-men who did work and furnished materials upon the credit of these buildings have intervened. Stevenson stands exactly as Kaas stood ; he took the mortgages subject to every defence that could be made against them when they were in the hands of Kaas. The auditor does not think that the notice given to Stevenson, that the payment of these mortgages would be contested, can enter into the present consideration. Notwithstanding this notice he acquired all the rights of Kaas, to whom no such notice had been given prior to the assignment to him by Butterworth." * * *

" Kaas acquired a good and valid title to the mortgages, subject to the payment of Mr. Willis's judgment. The auditor further decides that as against the mortgagor and as against encumbrancers whose liens take effect as of a date subsequent to May 9th 1869, the

[Mullison's Estate.]

day of the advance made by Kaas to Mullison, the holder of the mortgages would be entitled to receive from the fund for distribution the full sum advanced with interest. But, inasmuch as certain judgments were entered and certain mechanics' liens accrued in the interval between the creation of these mortgages and their negotiation to Kaas, the lien of these mortgages must be postponed so as to allow priority of lien to said judgment and lien creditors. As the judgment of Willis is thus entitled to priority it relieves the case of the discussion of the effect of the assignment of the mortgages to him as collateral security. The distribution of the fund will therefore be made according to the following scheme :—

" 1. To the liens of mechanics and material-men.

" 2. To the judgments entered prior to May 9th 1869, according to their seniority, as far as the fund reaches."

The auditor reported a schedule of distribution in accordance with the foregoing principles; and therefore excluded Stevenson from the fund.

After exceptions by Stevenson to the report it was confirmed by the Court of Common Pleas. Stevenson appealed to the Supreme Court, and assigned the decree of confirmation for error.

*J. O'Byrne* and *D. W. Sellers*, for appellant.

*E. Brady, C. H. Downing, T. J. Barger* and *G. W. Thorn*, for the several judgment and lien creditors to whom the fund was awarded, appellees.

The opinion of the court was delivered, March 30th 1871, by

SHARSWOOD, J.—When the five mortgages bearing date September 21st 1868 were executed by John R. Mullison in favor of Thomas J. Butterworth, without consideration, but for the purpose of being subsequently sold to raise money upon for the use of the mortgagor, Butterworth held them merely as a trustee for Mullison, bound to dispose of them according to his direction. There was no agreement by Butterworth to advance the money, and even if there had been a positive undertaking by him to sell the mortgages and hold the proceeds for Mullison's use, it would have been only a gratuitous promise to perform the duty of the trust which he at the same time assumed. It would not give consideration to the mortgages themselves as would a personal engagement by the mortgagee to advance the money in the future. It would not, therefore, make the mortgages available as against subsequent lien-creditors of the mortgagor, at least not from their date, though it may be conceded that they would be valid securities from the time of the advances, whether made by the mortgagee or his assignee. This seems to be the clear result of all

the cases: Terhoven *v.* Kerns, 2 Barr 96; Parmentier *v.* Gilles-pie, 9 Id. 86; Moroney's Appeal, 12 Harris 372, s. c. 3 American Law Reg. 169.

Upon the facts as reported by the auditor below and not the subject of exception, Kaas, the assignee of Butterworth, must be held to have taken the mortgages with notice that they were with-out consideration but made for the mere purpose of raising money by the sale of them—that they were not owned by the mortgagee but by the mortgagor. This was quite sufficient to put him upon inquiry as to whether there were any intervening liens or encum-brances, between the date of the mortgages and his purchase. For in what is an entirely analogous case it has always been held that when the maker of an endorsed note offers it for discount, that is not in the usual course of business, and is primâ facie evi-dence that it is an accommodation note. If the transaction were real the payee would be the owner of the note—he alone would have a right to sell and dispose of it: Parke *v.* Smith, 4 W. & S. 287; Eckert *v.* Cameron, 7 Wright 121; Byles on Bills 126, note 1. So if the mortgagor negotiates the sale of a mortgage it is a circumstance which ought to put the purchaser upon inquiry. The auditor reports, "that the whole transaction of the sale of the mortgages to Kaas was carried on by Mullison. He had pos-session of the mortgages. He gave information as to the condi-tion of the property. He produced the surveyor's certificate of survey. He obtained from Butterworth assignments in blank, in which afterwards the name of Kaas was inserted. He signed the collateral agreement with Kaas, and finally upon a written order of Butterworth's received the whole $2800, consideration-money, and receipted for Butterworth for the same." There was cer-tainly in all this sufficient to put Kaas upon inquiry as to what the true relation was between Butterworth and Mullison. No inquiry was ever made upon the subject. Washington J. Steven-son, the present appellant, who is the assignee of Kaas, stands in no better position than his assignor. The auditor reports it as a fact that " prior to the execution and delivery of this last assign-ment, Mr. Stevenson was notified by Richardson L. Wright, Jr., Esq.,—the attorney in fact of the mortgagor—that the creditors of the latter would contest the payment of the mortgages."

The assignee of a mortgage takes it subject to all equities between the original parties, but not to any secret equities of strangers, not arising out of the instrument: Mott *v.* Clark, 9 Barr 399; Taylor *v.* Gitt, 10 Id. 428; McConnell *v.* Wenrich, 4 Harris 365. It is unnecessary to decide in this case, and we do not decide, that if Kaas or Stevenson had, either of them, fairly stood in the position of bonâ fide purchasers of the mortgages without notice that they were originally executed without consi-deration, for the purpose of raising money by their subsequent

[Mullison's Estate.]

sale, but had become assignee under circumstances which would have estopped the mortgagor as by a declaration by him of no defence or set-off—that the appellant would have been affected by the liens subsequent to the date of record of the mortgages, whether of judgments or mechanics' claims upon the property. A person to whom a mortgage is offered for sale, either by the mortgagee, his agent or broker, and who makes due inquiry of the mortgagor, and receives from him a declaration that he has no defence or set-off, and then in good faith pays his money, would present, perhaps, a different case for the consideration of a court of equity from that which is presented by this appellant.

Decree affirmed and appeal dismissed at the costs of the appellant.